**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David VELEZ and Imelda Lomas–Flores, Defendants–Appellants.**

Nos. 93–2196, 93–2197.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1994.

Decided Feb. 3, 1995.

Mark A. Flessner, Asst. U.S. Atty., Jon King (argued), Office of U.S. Atty., Crim. Div., Chicago, IL, for U.S.

Michael G. Logan, Chicago, IL (argued), for David Velez.

JoAnne F. Wolfson, John M. Cutrone (argued), James J. Cutrone, Chicago, IL, for Imelda Lomas–Flores.

Before POSNER, Chief Judge, COFFIN,* and BAUER, Circuit Judges.

BAUER, Circuit Judge.

David Velez and his common-law wife, Imelda Lomas–Flores ("Lomas") were both convicted by a jury on various drug trafficking and money laundering charges. Convinced that the government committed prosecutorial misconduct in its closing argument, Velez and Flores contend that their convictions were improperly obtained. Velez also challenges his sentence, claiming that he was erroneously denied an acceptance of responsibility reduction under section 3E1.1 of the United States Sentencing Guidelines. Unpersuaded, we affirm the convictions of both defendants as well as Velez's sentence.

## I.

Having already unwittingly conducted two drug transactions with a confidential government informant, each of which involved less than a pound of cocaine, Velez participated in a third controlled transaction in which he sold three kilograms of cocaine to the same informant and an undercover agent. Police arrested Velez immediately after he made this sale. A search of his person uncovered, among other things, a .25 caliber semi-automatic pistol.

Police then proceeded to Velez's apartment. Lomas was present and consented to a search of the premises. There, the officers discovered several packages of cocaine weighing in total approximately nine kilograms. They also found and seized a .357 magnum revolver, a small plastic scale, and rolling papers. Upon concluding their search, police arrested Lomas. Subsequent investigation of the defendants' financial affairs revealed that the couple had earned a substantial amount of unreported income over the past several years, very little of which came from legitimate sources. A probe of the couple's bank accounts established that their apartment had been purchased using the proceeds of Velez's earlier drug sales.

* The Honorable Frank M. Coffin, United States Circuit Judge for the First Circuit, is sitting by designation.

Based on this evidence, a grand jury returned a nine-count indictment against Velez and Lomas charging them jointly with one count of conspiracy to distribute cocaine, one count of simple distribution of cocaine, both in violation of 21 U.S.C. § 841(a)(1), one count of possession of a weapon during and in relation to a drug trafficking offense (the .357 revolver found in the apartment), 18 U.S.C. § 924(c), and two counts of conducting a financial transaction using proceeds of an unlawful activity. 18 U.S.C. §§ 2, 1956(a)(1)(B)(i). Velez was charged individually with two additional counts of simple distribution and an additional count of using a firearm during and in relation to a drug trafficking offense (the .25 caliber weapon found on his person). 18 U.S.C. § 924(c). Lomas was charged separately with one count of making a false statement on a declaration provided under penalty of perjury in connection with fabricated tax documentation she had provided a loan officer in order to obtain a mortgage. 26 U.S.C. § 7206(1).

Neither defendant presented any evidence at trial, choosing to rely on cross-examination of government witnesses and closing arguments to present their defense. In his argument, Velez's attorney conceded Velez's guilt on two of the possession counts and one of the money-laundering counts. He contested his guilt on the other counts, devoting the majority of his remarks to establishing Lomas's innocence and asking the jury to acquit him of the conspiracy charge based on her innocence. Apparently unmoved by this act of modern-day chivalry, the jury convicted Velez on seven of the eight counts with which he was charged and Lomas on five of the six counts with which she was charged. The jury acquitted Velez and Lomas of the firearm count stemming from the .357 revolver found in the apartment.

Once during closing argument and twice during rebuttal, the defendants raised objections to certain remarks made by the government attorney. On each occasion, the trial court denied their attendant motions for a mistrial. They argue on appeal that each of these remarks was so egregious that a new trial was justified, and they request that we reverse the decision below. They also con-

test for the first time the propriety of a fourth statement which they argue constitutes an additional instance of prosecutorial misconduct.

■ Because allegations of prosecutorial misconduct are based on notions of due process, the inquiry focuses on the fairness of the trial and not the culpability of the prosecutor. *United States v. Canino,* 949 F.2d 928, 936 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992). In determining whether a statement made by a government attorney represented an instance of misconduct, we first look at the statement in isolation and decide if it was improper. *United States v. Osuorji,* 32 F.3d 1186, 1191 (7th Cir.1994). If it was, we then evaluate whether the improper statement rendered the trial unfair. *Id.* Several factors are relevant to this evaluation, among them: (1) the nature and seriousness of the misconduct; (2) the extent to which the comments were invited by the defense; (3) the extent to which any prejudice was ameliorated by the court's instruction of the jury; (4) the defense's opportunity to counter any prejudice; (5) the sufficiency of the evidence supporting the conviction. *Darden v. Wainwright,* 477 U.S. 168, 182, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986). We consider, in light of the foregoing, each remark in turn.

■ The first statement occurred when the government attorney told the jury in closing argument that the scale seized from the defendants' apartment had a "white powder residue on it." The defendants contend that because there was no testimony to that effect, the government, by its statement, was improperly arguing the existence of facts not in evidence in an attempt to connect Lomas to the cocaine. The trial judge overruled the objection because he determined that the question of whether there was residue on the scale was a factual question which the jury could decide based on its own observation.

■ We affirm the trial judge's ruling because the remark was not improper. A statement may be improper if the attorney relies on evidence not before the jury or injects into his remarks facts for which no evidence has been offered. *United States v.*

*Smith,* 26 F.3d 739, 754 (7th Cir.), *cert. denied,* ——— U.S. ———, 115 S.Ct. 680, 130 L.Ed.2d 612 (1994). On the other hand, when the jury has the evidence in its possession and is equipped to ascertain whether the government's characterization is accurate, a statement characterizing that evidence is not improper. *Id.* The contested remark falls within this latter category. The evidence was within the jury's possession and it was free to inspect the scale to confirm or reject the government's characterization.

■ Even if the remark could be construed as improper, the outcome would not differ because its impact was insignificant. As is customary, the jury was instructed to disregard any statements made in closing argument to the extent that they were unsupported by the evidence. More importantly, the evidence apart from the scale, namely the nine kilograms of cocaine in the defendants' apartment, was at least as inculpating as the scale. We find, therefore, that the remarks pertaining to the scale did not render the trial unfair.

■ The second challenged statement came in response to Velez's claim that Lomas was not involved in the drug trafficking. The government theorized that part of the conspiracy was that if the defendants got caught, Velez would take all the blame. Emphasizing this aspect of its theory, the government stated, "I suggest to you, ladies and gentleman, that in fact the conspiracy continues." The trial court sustained defense counsel's immediate objection and ordered the jury to ignore the remark. At the conclusion of the government's rebuttal, the defendant moved for a mistrial based on this comment, claiming that it was a personal attack on defense counsel. The prosecutor clarified that his intent was not to implicate the defense attorneys in the crimes of their clients, but simply to respond to the suggestion that Lomas was swept into this case by overzealous law enforcement.

After reviewing the contested statement, the trial judge found that its implication as to defense counsel was so nebulous that it did not merit a mistrial. We agree. The statement's connection to defense counsel was tenuous at best. The prosecutor was quite clearly making the point that concealing Lomas's role in the endeavor was part of the defendants' plan. The remark had nothing to do with defense counsel.

We confronted a similar argument in *United States v. Williams,* 31 F.3d 522, 529 (7th Cir.1994), where the defendants claimed that the remark, "Don't let them pull a fast one on you," made by the government in closing argument was a personal attack on defense counsel. We rejected the claim, holding that in the context of the argument, it was clear that the comment was based on the evidence and not on the attorneys. *Id.* The situation here is identical. Responding to the defendants' theory, the government attempted to cast doubt on that theory by positing an alternative explanation that was based rationally upon the evidence. In questioning the argued position of the defendants, the prosecutor did nothing to implicate defense counsel in the crimes of their clients. Consequently, the trial court's ruling, finding no discernible disparagement, is affirmed.

■ Velez and Lomas challenge another remark made by the prosecutor during rebuttal. Referring to the defendants, the prosecutor stated, "They want to live the life which they otherwise could never afford; because they are unwilling to go out and actually do the work, which everybody else has to do in life." Earlier, during its case-in-chief, the government had presented evidence showing that Velez received public aid. The defendants claim that this evidence was admitted to enable the government to make the challenged remark which they claim was an improper appeal to the class prejudices of the jury. In other words, Velez and Lomas believe that the contested statement was an attempt to get the jury to convict the defendants based on their poverty rather than the evidence against them.

This argument borders on the ridiculous and demonstrates an unhealthy disregard of the evidence in the government's case. The relevance of Velez's receiving public aid was manifest: to prove that various financial transactions into which he entered, including the purchase of his home, had to be funded by illegally derived money. The remarks

made during rebuttal were intended to emphasize to the jury the likelihood that the relative affluence which Velez and Lomas enjoyed was the result of illegal activity.

■ Finally, the defendants challenge for the first time on appeal another reference made by the prosecutor during its rebuttal. Responding to defense counsel's statement depicting Lomas as a mere teenager, the prosecutor stated, "That is a lie." The defendants claim that this was an impermissible personal attack on the defense attorney's character.

■ Read in context, however, it becomes clear that the prosecutor was referring to Lomas and not her attorney. The prosecutor followed the statement quoted above by detailing the many inconsistent and patently false representations which Lomas made about her age and employment status. Then the prosecutor said, "She has told so many lies to so many people." To the extent that the defendants challenge the characterization of Lomas as a liar, their claim must also fail.

■ Although we review such claims under the plain error standard of Rule 52(b) of the Federal Rules of Criminal Procedure, the defendants would not prevail with this claim even had they made a timely objection in the proceedings below and were therefore entitled to a less stringent standard of review. The prosecutor's statement was an inference reasonably drawn from a record replete with examples of Lomas making misrepresentations in order to secure employment and loans. The government may go so far as to characterize the defendant as a liar if such an inference can be drawn reasonably from the evidence. *United States v. Goodapple,* 958 F.2d 1402, 1409–10 (7th Cir.1992). Hence, the contested statement, plainly an argument based on evidence of Lomas's fabrications, was not improper. Having determined that none of the contested remarks justify reversal of the trial court's decision, we turn our attention to Velez's sentencing challenge.

■ Velez's argument requires a brief description of the events preceding the trial. Velez had expressed a willingness to plead guilty to all the counts in the indictment except for the gun possession charge based

on the .357 revolver found in his apartment; the same charge of which he was eventually acquitted. When the government stated its insistence on pressing on with the gun count even if Velez pleaded guilty to the other seven counts, Velez opted to go to trial. Velez explained his decision to the trial court just before jury selection.

At his sentencing hearing, Velez argued that the foregoing course of events entitled him to a reduction in his sentence for acceptance of responsibility. U.S.S.G. § 3E1.1. The court denied his request, and Velez now appeals that decision.

■ We give great deference to a trial judge's denial of an acceptance of responsibility reduction, reversing only if clearly erroneous. *United States v. Guadagno,* 970 F.2d 214, 224 (7th Cir.1992). Far from erroneous, the trial court's decision on this matter was perfectly consistent with the intent of the sentencing guidelines. Application Note 2 states:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or to challenge the applicability of a statute to his conduct).

■ Velez's situation does not present us with one of the "rare situations" described in Application Note 2. Unsatisfied with the government's plea bargaining position, Velez opted to go to trial. By his choice, he automatically forced the government to prove his guilt beyond a reasonable doubt on all eight counts. Moreover, he challenged the government's evidence on four of those counts. The government did nothing to prevent Velez from pleading guilty to the seven counts to

which he was willing to plead. In essence, Velez's position is that had he received a better deal from the government, he would have pleaded guilty and that his willingness alone should be sufficient to merit a reduction for acceptance of responsibility. Unfortunately for Velez, that is not what Congress had in mind in drafting this guideline. Congress deliberately excluded from section 3E1.1 consideration, those defendants who proceed to trial to contest their factual guilt. A defendant's motivation for that decision is irrelevant.

■ Velez claims that by equating acceptance of responsibility with a guilty plea, the trial court put an unconstitutional condition on his right to trial. We considered and rejected this identical argument in *United States v. Saunders*, 973 F.2d 1354, 1362 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993). The acceptance of responsibility reduction codifies the tradition of offering lenience to defendants in exchange for their entering a guilty plea, *United States v. Guadagno*, 970 F.2d 214, 226 (7th Cir.1992); a tradition that was deemed constitutional by the Supreme Court in *Corbitt v. New Jersey*, 439 U.S. 212, 219, 99 S.Ct. 492, 497–98, 58 L.Ed.2d 466 (1978). Contrary to Velez's claim, the rule is not a bright line determination. As the Application Note quoted above makes clear, there remain instances in which a defendant may go to trial and still benefit from the reduction. Conversely, a defendant who pleads guilty is not automatically entitled to the reduction. U.S.S.G. § 3E1.1, Application Note 3. There is no indication that the trial court deviated in any way from this interpretation. We, therefore, reject Velez's challenge to the constitutionality of the trial court's application of the sentencing guidelines.

Our scrutiny of the record uncovers no reason to reverse either conviction or to remand Velez's sentence for reconsideration. Velez's and Lomas's convictions as well as Velez's sentence are therefore

AFFIRMED.