In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2923

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ALLEN K. GILBERTSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04-CR-206-S-01—**John C. Shabaz**, *Judge.*

ARGUED DECEMBER 1, 2005—DECIDED JANUARY 30, 2006

Before EASTERBROOK, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Allen Gilbertson, a used car salesman, was charged with five counts of knowingly altering the odometers of motor vehicles, in violation of 49 U.S.C. §§ 32703(2) and 32709(b). He was convicted on four counts after a jury trial[1], and he was sentenced to 15 months' imprisonment on each count, to be served concurrently. Gilbertson now challenges his convictions and sentence on appeal. For the reasons set forth below, we affirm in all respects.

---

[1] Count 1 was dismissed prior to trial.

## I. HISTORY

Steven Boehm noticed a 1989 Ford Probe sitting on the lot at Griesbach Auto in Weston, Wisconsin. Believing there was something familiar about the car, Boehm took a closer look. Purely by coincidence, Boehm discovered the Probe used to be his car; he had traded it in weeks earlier to someone else. That was not his only discovery, however. Boehm also discovered the odometer on the car now read around 70,000 miles, which seemed odd to Boehm given that the car had around 92,000 miles on it when he traded it in. Boehm called Tom Krummel, an investigator with the Wisconsin Department of Transportation (the "DOT"), to relay his discoveries. An investigation ensued.

Krummel initially went to Griesbach Auto and located the Probe. He later telephoned the dealership and spoke with Gilbertson, a used car salesman and previous owner of the then-defunct D&A Auto. During that call, Gilbertson said the Probe was his (i.e., left over from D&A) and that the speedometer had been replaced because it was defective.[2] Krummel was suspicious, however, and arranged an in-person meeting for June 20, 2001, at Krummel's office in Wausau, Wisconsin. Gilbertson attended as scheduled; also present was Kevin Konopacki, an odometer fraud specialist with the DOT.

Gilbertson initially denied tampering with the odometer on the Probe. But upon further questioning, he admitted he "changed out" (i.e., replaced) the odometer to make the Probe easier to sell, even though the odometer was working properly. He also admitted to tampering with the

---

[2] The record indicates a speedometer and odometer are inextricable in that replacing the speedometer necessarily results in the replacement of the odometer as well. A replaced odometer is required to reflect zero miles, and a warning sticker is to be placed on the vehicle.

odometers on approximately 25 other cars. At this point, the investigators offered Gilbertson a deal. If Gilbertson provided a written statement, identified the 25 cars, and provided compensation to the victims, then they would refer the case to the state prosecutor's office, as opposed to the U.S. Attorney. Gilbertson complied for the most part. He provided a written statement admitting what he did and admitting that what he did was wrong. He also provided restitution to his victims, which covered approximately 70 cars, as opposed to the original 25.[3] Furthermore, he surrendered his business records as well as his license to sell cars. As promised, his case was referred to the state prosecutor's office for prosecution.

Unfortunately for Gilbertson, the state prosecution did not proceed as planned. Although not entirely clear from the record, the state prosecutor apparently grew frustrated with how the case was progressing and had all charges dismissed. The prosecutor then referred the case to the U.S. Attorney's office for prosecution. On December 8, 2004, Gilbertson was indicted by a federal grand jury with five counts of odometer tampering. It is important to note the Probe was not among the four remaining vehicles listed in the indictment.

Prior to trial, Gilbertson filed a motion to suppress his written and oral statements.[4] In partially granting the motion, the district court excluded any statements Gilbertson made after the investigators offered their deal. This included the written statement, and anything Gilbertson said after the offer. Any statements made prior to the offer were still admissible.

---

[3] Krummel and Konopacki discovered the additional 45 vehicles during the course of their investigation through a review of Gilbertson's records.

[4] Gilbertson does not appeal the district court's ruling on the underlying motion to suppress.

At trial, the government introduced the Wisconsin Certified Certificates of Title for the four vehicles listed in the remaining counts. They contained the odometer statements for the vehicles at the time they were purchased by Gilbertson. The government then called the four victims, who testified as to the mileage on the vehicles at the time they purchased them. Their testimony established that the mileage on their respective vehicles was less than that listed on the corresponding titles.

The government faced a significant obstacle at trial. The admissible evidence established Gilbertson admitted to tampering with approximately 25 cars, but there was little evidence linking Gilbertson's tampering to the four specific vehicles listed in the indictment, as the Probe was not included in the remaining counts and all of Gilbertson's subsequent statements had been excluded. During the cross-examination of Konopacki, Gilbertson's attorney went to great lengths to point out Konopacki did not inspect the four vehicles, nor did he contact the previous owners regarding the odometer statements. On re-direct, however, the government asked Konopacki why he did not inspect the vehicles or contact the previous owners. Konopacki answered he contacted Gilbertson directly and asked him if each of the four vehicles were one of the original 25, and Gilbertson responded, "Yes." This provided the necessary link the government was looking for. Gilbertson's attorney did not object to this testimony, at least not until a recess, at which time the trial judge found the objection was not timely and was therefore waived.

On appeal, Gilbertson argues the admission of the vehicle titles to establish the vehicles' mileage at the time of his purchase constituted testimonial hearsay under *Crawford v. Washington*, 541 U.S. 36 (2004), and thus violated his right under the Confrontation Clause of the U.S. Constitution. He further argues the government engaged in prosecutorial misconduct by eliciting his post-deal confirmations

regarding the four vehicles in violation of the district court's order. Along the same lines, Gilbertson argues the government's repeated reference to his "confession" during closing argument also violated the court's order and constituted prosecutorial misconduct. Finally, Gilbertson argues he was entitled to a reduction in his Guidelines sentence for the acceptance of responsibility.

## II.  ANALYSIS

### A.  Sixth Amendment Claim

Gilbertson asserts that the admission of the odometer statements from the certified certificates of title for the four vehicles contained in the indictment violated his rights protected by the Sixth Amendment's Confrontation Clause. The titles contained a chronological listing of the mileage for the previous owners. At trial, the mileage was compared to the mileage testified to by each of the buyers of the vehicles contained in the indictment to establish that the mileage displayed on the odometers had been lowered.

The Sixth Amendment provides that a criminal defendant "enjoy[s] the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. We review an evidentiary ruling that affects a defendant's right to confront witnesses de novo. *United States v. Scott*, 145 F.3d 878, 888 (7th Cir. 1998) (citation omitted); *see United States v. Hendricks*, 395 F.3d 173, 176-77 (3d Cir. 2005) (citations omitted). The United States Supreme Court recently held that a "testimonial statement" is not admissible at trial under the Confrontation Clause unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him or her. *Crawford*, 541 U.S. at 53-54. However, the Court "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id.* at 68.

The Court did provide us with some guidance on what constitutes "testimonial." For example, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* The Court also noted three formulations of the "core class of 'testimonial' statements": 1) "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; 2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and 3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52 (citations and quotations omitted).

Gilbertson's argument, a rather conclusory one with virtually no legal citations other than to *Crawford*, focuses almost entirely on the second formulation above. Gilbertson repeatedly points out the Court included affidavits as examples of testimonial statements, and he intimates the odometer statements contained in the titles were equivalent to affidavits. Gilbertson also relies on the definition of "testimony," in that the odometer statements were solemn declarations or affirmations made for the purpose of establishing or proving some fact. But Gilbertson's heavy reliance on the dictionary definition of "testimony" and the second formulation above misses the point of *Crawford*. The second formulation is based upon Justice Thomas's concurring opinion in *White v. Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment). In *White*, Justice Thomas constructed his formulation as follows:

> The federal constitutional right of confrontation extends to any witness who actually testifies at trial, but the Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions. It was this discrete category of testimonial materials that was historically abused by prosecutors as a means of depriving criminal defendants of the benefit of the adversary process, and under this approach, the Confrontation Clause would not be construed to extend beyond the historical evil to which it was directed.

*Id.* at 365 (citation omitted). The "evil" that Justice Thomas was referring to "was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." *See Crawford*, 541 U.S. at 50. Therefore, reading Justice Thomas's formulation with the first and the third, it is readily apparent from *Crawford* that "[o]nly statements made following government official initiated ex parte examination or interrogation developed in anticipation of or in aid of criminal litigation are encompassed within the core meaning of the confrontation clause." 30B Michael H. Graham, *Federal Practice and Procedure* § 7032 (2d ed. Supp. 2005). Other circuits have come to a similar conclusion. *United States v. Cromer*, 389 F.3d 662, 673-74 (6th Cir. 2004) (explaining, under *Crawford*, that a statement is testimonial if "made in circumstances in which a reasonable person would realize that it likely would be used in investigation or prosecution of a crime"); *United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005) (citation omitted); *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005); *United States v. Saget*, 377 F.3d 223, 228-29 (2d Cir. 2004); *Horton v. Allen*, 370 F.3d 75, 83-84 (1st Cir. 2004).

The odometer statements in the instant case are not testimonial because they were not made with the respective

declarants having an eye towards criminal prosecution. *See Crawford*, 541 U.S. at 56 n.7. The statements were not initiated by the government in the hope of later using them against Gilbertson (or anyone else), nor could the declarants (or any reasonable person) have had such a belief. The reason is simple: each declaration was made *prior to* Gilbertson even engaging in the crime. Therefore, there is no way for the sellers to anticipate that their statements regarding the mileage on the individual cars would be used as evidence against Gilbertson for a crime he commits in the future. We have no trouble concluding that the odometer statements are not testimonial as they were not made in anticipation of or in aid of criminal litigation. We further note the statements were not initiated by the government to aid it in a criminal investigation; rather, they were initiated by the individuals solely in an effort to comply with the state's procedures to sell a car. There is no apparent risk of abuse by prosecutors, and the evil of which Justice Thomas alluded to could not be present here.

As a final matter, we note *Crawford* does provide some examples of testimonial evidence, namely "police interrogations" and "prior testimony at a preliminary hearing, before a grand jury, or at a former trial." *Id.* at 68. Naturally, the odometer statements could not properly be categorized as any of these.

## B. *Prosecutorial Misconduct*

Gilbertson argues the government engaged in prosecutorial misconduct when it elicited testimony from Konopacki that the district court had previously ordered could not be used by the government for any purpose. As stated previously, the district court partially granted Gilbertson's pretrial motion to suppress statements, and ordered that all statements he made to Konopacki and Krummel subsequent to Konopacki's offer to forego referral to the U.S. Attorney

could not be used by the government at trial. After the offer, Konopacki called Gilbertson regarding the four vehicles listed in the indictment. Konopacki asked if these vehicles were among the 25 vehicles that Gilbertson had earlier indicated had been tampered with. Gilbertson responded, "Yes." It is this later confirmation that the government introduced at trial of which Gilbertson now complains.

We analyze claims of prosecutorial misconduct using the two-step framework established in *Darden v. Wainwright*, 477 U.S. 168 (1986). The first question is whether the prosecutor's comments were improper. *Id.* at 180-81 (citations omitted). If improper, then we must decide whether they prejudiced the defendant. *Id.* Six factors guide the prejudice inquiry: 1) whether the prosecutor misstated the evidence; 2) whether the remarks implicated specific rights of the accused; 3) whether the defense invited the response; 4) the trial court's instructions; 5) the weight of the evidence against the defendant; and 6) the defendant's opportunity to rebut. *United States v. Washington*, 417 F.3d 780, 786 (7th Cir. 2005) (citation and quotations omitted). In the instant case, the prosecutor's question was not improper, and we need not reach the second inquiry.

It was Gilbertson's counsel who opened the door to this line of questioning. During Konopacki's cross-examination, Gilbertson's attorney repeatedly asked questions focusing on the fact that Konopacki did not physically inspect the four vehicles listed in the indictment for evidence of tampering. The record is replete with this testimony; for illustrative purposes, we recount an exchange between Gilbertson's attorney and Konopacki regarding one of the vehicles:

Q: Did you personally check—again, you did not personally check this to see if there was physical signs of rolling back any odometer on the Tara Blood vehicle?

A: That's correct.

Q: Did you personally check for any repair stickers in the doorframe of the vehicle?

A: I did not personally check, no.

Q: Are you aware of any physical evidence, physical evidence that the dash was repaired or removed on that vehicle?

A: No.

Q: Did you ever interview Bradley Vowell, Rosemurgy Toyota or Fox Valley Wholesale to verify their mileage?

A: No, I did not.

The problem with this line of questioning is that Gilbertson's counsel knew why no interviews or physical examinations had been made. It is undisputed the attorney had known since the final pretrial conference that the reason Konopacki performed no further investigation is because Konopacki would telephone Gilbertson himself, who in turn confirmed that the vehicle was indeed one of the ones that had been tampered with and was included in the 25 vehicles Gilbertson mentioned earlier. Therefore, there was no need for Konopacki to investigate any further.

In effect, the jury may have been misled into believing Konopacki conducted a shoddy investigation. The attorney's statements during closing argument make clear what he was attempting to establish. For example, he stated, "[Konopacki] admitted that he had never— he admitted that he had never looked at the vehicles himself. . . . [S]ince he has no physical evidence, [Konopacki] is relying upon titles that he never checked out, he never verified and he never checked the figures on. . . . Where was the follow-up in this investigation to verify that the mileage in fact was as represented?" Furthermore, he stated, "Mr. Konopacki chose to make no investigation whatsoever about the true mileage on this car because he

didn't really care to know. He was so sure of his assumptions that he failed to investigate the truth behind the titles."

The truth is there was follow-up, via Konopacki's confirmation with Gilbertson. The government was entitled to bring this testimony out during Konopacki's re-direct examination, despite the district court's order to the contrary, because Gilbertson's attorney opened the door to this line of questioning. *See United States v. Moore*, 115 F.3d 1348, 1358 (7th Cir. 1997) (stating that when a party opens the door to evidence that would be otherwise inadmissible, that party cannot complain on appeal about the admission of that evidence); *United States v. Wynn*, 845 F.2d 1439, 1443 (7th Cir. 1988). As the government aptly argued in its brief before us, "Gilbertson's counsel pushed [ ] Konopacki into a corner knowing the only exit was closed."

Gilbertson also argues prosecutorial misconduct occurred when the government repeatedly referred to his "confession" during its closing argument. Gilbertson claims the statements he made that were actually admitted at trial did not constitute a confession. Therefore, according to the argument, a new trial is warranted because of "the importance of the image created in the jury's mind that Mr. Gilbertson confessed" when the evidence did not actually establish the existence of a confession.

It is undisputed Gilbertson did not object to this characterization at trial. In accordance with Federal Rule of Criminal Procedure 52(b), we review any error not objected to at trial for plain error. Plain error exists when the error is clear, affected substantial rights, and was prejudicial. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997).

We conclude that the characterization of Gilbertson's statements as a confession was not plain error. A confession is "[a] criminal suspect's oral . . . acknowledgment of guilt,

often including details about the crime." Black's Law Dictionary 317 (8th ed. 2004); *Gov't of Virgin Islands v. Harris*, 938 F.2d 401, 409 n.5 (3d Cir. 1991) (defining "confession" as "a statement admitting or acknowledging all facts necessary for conviction of the crime") (citation omitted). The evidence properly introduced during trial clearly indicated Gilbertson admitted to tampering with the odometer in the Ford Probe and that he knew this was wrong.[5] He also admitted to tampering with the odometers on approximately 25 cars.

It is true that these statements by themselves do not rise to a confession in this case, as there is no link between them and the four cars specifically listed in the indictment. However, as explained above, Konopacki testified on re-direct examination that Gilbertson later confirmed that the four cars listed in the indictment were a part of the original 25 that he mentioned earlier, and this testimony was properly admitted. Gilbertson's later confirmation provides the necessary link between his previous statement regarding the 25 cars and the four cars actually contained in the indictment. Because Gilbertson did confess, we find no error in the government's characterization of Gilbertson's statements as such.

## C.  *Reduction for Acceptance of Responsibility*

Gilbertson's final argument is that Judge Shabaz abused his discretion in failing to grant Gilbertson a

---

[5] Gilbertson disputes whether there was any admissible evidence regarding his willfulness and whether he knew his actions were wrong. However, Konopacki testified as follows: "I just remember [Gilbertson] taking a big sigh of relief and he said he was glad to get this off his shoulders and, you know, that he knew it was a mistake. He was apologetic and he knew it was wrong." As a result, there was indeed testimony of Gilbertson's willfulness.

reduction in his sentence for acceptance of responsibility. An acceptance of responsibility determination is a factual finding that we review for clear error. *See United States v. Hendricks*, 319 F.3d 993, 1009 (7th Cir. 2003) (citation omitted); *United States v. Herrera-Ordones*, 190 F.3d 504, 511-12 (7th Cir. 1999) (citations omitted); *United States v. Cunningham*, 103 F.3d 596, 597-98 (7th Cir. 1996) (citation omitted).

Gilbertson's shortcoming is that he does not establish it was clear error for Judge Shabaz to conclude Gilbertson did not fully accept responsibility for his actions. The sentencing judge who makes the acceptance of responsibility determination is due great deference, *United States v. Guadagno*, 970 F.2d 214, 224 (7th Cir. 1992), as that judge "is in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. 5. "[A]n appellate court is ill-equipped to assess whether a particular defendant is motivated by genuine acceptance of responsibility or by a self-serving desire to minimize his own punishment. Unlike the district court judge, we do not enjoy a 'front row seat' from which to assess [the defendant's] statements and demeanor." *Cunningham*, 103 F.3d at 598 (citations omitted).

The main hurdle Gilbertson must overcome is that he elected to plead not guilty and proceed to trial. While he recognizes that the reduction for acceptance of responsibility is not generally available for defendants who proceed to trial, he argues he is eligible since his defense was "limited to a legal point," namely that he did not act willfully under the statute. Gilbertson misstates the law, and his reliance on *United States v. Woodward*, 408 F.3d 396 (7th Cir. 2005) is wholly misplaced. The reduction is generally not available to those who go to trial to contest "the essential factual elements of guilt." U.S.S.G. § 3E1.1, cmt. 2; *United States v. Velez*, 46 F.3d 688, 694 (7th Cir. 1995); *United States v. Gomez*, 24 F.3d 924, 926 (7th Cir.

1994). A defendant would typically only be eligible if he went "to trial to assert and preserve issues that do not relate to factual guilt," like constitutional challenges to the relevant statute or challenges to the applicability of a certain statute. U.S.S.G. § 3E1.1, cmt. 2; *Cunningham*, 103 F.3d at 598 (citation omitted).

Our own review of the record reveals it was not clear error for the district court judge to conclude Gilbertson contested the essential factual elements of guilt and was thus ineligible for the reduction. Gilbertson himself admits his defense was based in part on his willfulness, which is an essential factual element of guilt. At trial, Gilbertson challenged the manner in which the investigation was conducted, the accuracy of the title documents, and the recollection of the victims. He relied heavily on his defense that he lacked the requisite intent under the statute. Given this information, Gilbertson has not convinced us the district court judge's decision was clear error. *See United States v. Williams*, 202 F.3d 959, 962 (7th Cir. 2000) (finding no clear error in denying acceptance of responsibility when defendant challenged factual evidence of guilt and required government to prove its case against him); *United States v. Bonanno*, 146 F.3d 502, 513 (7th Cir. 1998) (finding no clear error in denying acceptance of responsibility when defendant challenged factual evidence of guilt, attempted to discredit testimony of FBI agent, and did not contest the constitutionality or applicability of relevant statute).

As a final matter, Gilbertson does not argue that his ultimate prison sentence was unreasonable. A sentence within a properly calculated guideline range, as is the case here, is presumptively reasonable, *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), and Gilbertson does not identify any factor under 18 U.S.C. § 3553(a) that might allow us to conclude that the district court was obligated to impose a lower sentence. Therefore, Gilbertson

does not rebut the presumption that his Guidelines sentence was reasonable. *See id.*

### III.  CONCLUSION

For the reasons set forth above, we conclude there was no Sixth Amendment violation during Gilbertson's trial, nor was there prosecutorial misconduct. Further, it was not clear error for the district court judge to find that Gilbertson had not accepted responsibility. The jury's verdicts will not be disturbed, and the convictions and sentence are AFFIRMED.

A true Copy:

      Teste:

                  _____
                  *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*