In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1854

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BERNARD C. SEIDLING,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:11-cr-00126-bbc-1 — **Barbara B. Crabb**, *Judge.*

ARGUED SEPTEMBER 30, 2013 — DECIDED DECEMBER 16, 2013

Before WOOD, *Chief Judge*, and BAUER and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant-Appellant, Bernard C. Seidling ("Seidling"), was charged with creating and executing a scheme to defraud by knowingly mailing documents containing false information to small claims courts in Wisconsin and hiding the filings of the actions from the named defendants. Seidling stipulated to the facts of the charge and waived his right to a jury trial. Seidling then moved for a

judgment of acquittal; he argued that the elements of the mail fraud statute could not be met because he never intended the false statements and misrepresentations to be communicated to the victims. On December 26, 2012, the United States District Court for the Western District of Wisconsin found Seidling guilty of fifty counts of mail fraud in violation of 18 U.S.C. § 1341. Seidling appeals the judgment of the district court on the grounds that there was no convergence between the victims' losses and the fraudulent statements. For the reasons that follow, we affirm the conviction and sentence.

## I. BACKGROUND

From 2003 to 2009, Wisconsin operated small claims courts in order to resolve smaller disputes more quickly and efficiently. In general, the small claims courts operated in the following manner: individuals eighteen years of age or older were permitted, with or without a lawyer, to file a summons or complaint for small claims. The individuals could file the action in any county in which the defendant resided or did a substantial amount of business, where the claim arose, or as otherwise provided by law. Wis. Stat. § 801.50(2). The claimant was obligated to arrange for service of the documents on the defendant or, if the defendant could not be served, to pay to have the complaint published in a newspaper circulated in the area where the defendant resided. If the claimant was unable to locate a defendant to serve the lawsuit, or a defendant did not appear before the court, the case could be certified to the small claims court where a default judgment would be granted.

Once a default judgment was granted in the small claims action, the claimant could pay an additional fee to have the judgment docketed in the county where the claim was filed. The judgment against the defendant would then be added to the electronic Wisconsin Circuit Court Access System. After the electronic judgment was added to the system, the claimant could seek execution of the judgment against the defendant's nonexempt property in the county in which it was located. For property located in a different county, the claimant could request that the court issue an order directing the sheriff of that county to collect the nonexempt property to satisfy the judgment.

## A. Fraudulent Conduct and Indictment

Beginning in or about 2003 and ending on December 31, 2009, Seidling filed small claims actions against twenty-four individuals and one corporation. Seidling used fourteen fake business names to file the claims in ten counties in the Western District of Wisconsin, and typically sought judgments of no more than $5,000.[1] Seidling's claims contained various false

---

[1] Specifically, Seidling filed small claims in the counties of Iron, Eau Claire, Jackson, Sawyer, Dane, Barron, Chippewa, Dunn, Ashland, and Polk. Seidling used a variety of fake business names in the lawsuits: D&A Enterprises; Diverse Services; JVC Investments; MW Enterprises; A&B Enterprises; DD Enterprises; Midwest, LP; and JDR Enterprises. The defendant corporation was Footsmart and the individuals listed as defendants included Kenneth and Tamera McCormick, David Smith, David and Jezzeeca Lindquist, Steve Sletner, Sharmin Carlson (a/k/a Sharmin Hanson), Mark Woychik, Nancy Drake, Nicole Penegor, Clarence and Shirley Schielfelbein, Neil and Marian O'Donnell, Dori Stepan,

(continued...)

statements and misrepresentations, including: listing false addresses for the named defendants, falsifying facts concerning attempts to serve documents on the defendants, using fake business names, and falsely certifying to the courts that notice of the claims were published in the appropriate area's newspapers. Seidling knew that none of the defendants he listed in the complaints lived or did business at the addresses he provided. For this reason, none of them were served with the complaints, summons, or other pleadings; none of them were aware of any attempts to serve them; and none of them saw notice of the lawsuits published in the newspapers.

For each lawsuit, Seidling used the United States Postal Service to mail pleadings, proof of attempted service, and other case documents to the Wisconsin small claims courts. When the defendants did not appear, the small claims courts issued default judgments in each case. Seidling attempted to collect one judgment through garnishment; he was unsuccessful because the named defendant no longer worked for the garnishee. Seidling successfully obtained approximately five orders directing sheriffs to execute the collection of various defendants' property. Based on this conduct, the government indicted Seidling with fifty counts of mail fraud in violation of 18 U.S.C. § 1341.

On December 6, 2011, Seidling pleaded not guilty to all charges and a trial schedule was set for May 2012. On March 26, 2012, Seidling moved to dismiss the indictment. He

---

[1] (...continued)
Raymond and Jerrianne Closs, Jodi Clay, and Leo Schuch.

argued that the facts were insufficient to establish the materiality requirement, since the false statements and misrepresentations contained in the complaints were not made directly to the victims of the fraud. The magistrate judge recommended that the district court deny Seidling's motion; the district court adopted the magistrate's recommendation and denied Seidling's motion to dismiss on July 25, 2012.

### B. Bench Trial and Sentencing

On April 12, 2012, the parties filed a joint motion to resolve the case through a bench trial on the stipulated facts; the district court granted the motion. On October 17, 2012, Seidling filed a motion of acquittal pursuant to Fed. R. Crim. P. 29. Again, Seidling argued that the government failed to satisfy the materiality element of bank fraud because any false statements and misrepresentations were made to the small claims court and not to the victims. Seidling contended that his misrepresentations had no tendency or ability to influence the victims to give up their money or property. The parties briefed the issue, and on December 26, 2012, the district court denied Seidling's motion for acquittal; the court ultimately found Seidling guilty on all fifty charges in the indictment.

The intended loss set out in the indictment was in the amount of $75,000. However, the government discovered fifty-eight additional lawsuits that had been filed by Seidling with approximately sixty victims and an intended loss of $295,220. The combined total intended loss amount was calculated to be $370,220. Although none of the targeted defendants suffered immediate pecuniary harm, many of them experienced, and continue to experience, challenges in reopening the lawsuits,

getting them dismissed, clearing their credit, and removing the fraudulent lawsuits from the Wisconsin Circuit Court Access System.

A presentencing investigation report ("PSR") filed with the district court on February 25, 2013, provided an advisory Sentencing Guidelines calculation of an offense level of nineteen: a base level of seven plus an increase by twelve levels for the intended loss of $370,220. The PSR recommended a three-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility, which would result in an adjusted offense level of sixteen. The probation office calculated Seidling's criminal history category to be II, resulting in an advisory Guidelines range of twenty-four to thirty months. The United States Attorney's Office agreed with the PSR recommendation for a three-level reduction for acceptance of responsibility, but recommended a sentence at the top of the Guidelines range based on Seidling's history of fraud, the large number of victims, and the intended loss amount.

At sentencing on April 11, 2013, the district court judge declined to apply the three-level reduction on the basis of acceptance of responsibility for Seidling, stating, "I am not persuaded that you qualify for the three-level downward departure … you have done nothing else to suggest … that you feel any responsibility for the harm you caused your victims." The court sentenced Seidling to thirty-six months in prison for each of the fifty counts in the indictment to run concurrently, followed by three years of supervised release. No restitution was ordered, but Seidling was fined $10,000 and ordered to pay a $100 criminal assessment for each count. The court made clear that it would have imposed the same sentence even if it

had granted Seidling a three-level reduction for acceptance of responsibility due to the victims' "emotional trauma" caused by Seidling's fraudulently obtained judgments. Seidling filed a timely notice of appeal on April 23, 2013.

First, Seidling argues that this Court should adopt the theory of convergence and find that, because Seidling never communicated with nor intended to communicate with the victims of the fraud, the government did not prove the materiality element of a mail fraud scheme. Second, Seidling contends that at his sentencing, the district court's denial of a downward departure for acceptance of responsibility resulted in procedural error that was not harmless.

## II. DISCUSSION

### A. Mail Fraud Scheme and the Element of Materiality

A district court's denial of a motion for judgment of acquittal is reviewed *de novo* in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *United States v. Johns*, 686 F.3d 438, 446 (7th Cir. 2012); *United States v. Reynolds*, 801 F.2d 952, 954 (7th Cir. 1986). A conviction of mail fraud under 18 U.S.C. § 1341 requires three essential elements: (1) a scheme or artifice to defraud, (2) the use of the mailing system for the purpose of executing the scheme, and (3) the defendant's participation in the scheme with the intent to defraud. *United States v. Stockheimer*, 147 F.3d 1082, 1087 (7th Cir. 1998). Nothing in the statutory text of 18 U.S.C. § 1341 requires a scheme to defraud to involve deception of the same person or entity whose money or property is the intended object of the scheme.

The Supreme Court in *Neder v. United States*, 527 U.S. 1, 21–25 (1999), held that under federal fraud statutes the government must prove that the deceptive conduct underlying the scheme to defraud must be "material." Specifically, the Supreme Court stated, "[i]n general, a false statement is material if it has a natural tendency to influence or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Id.* at 16 (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)) (internal quotation marks omitted). The Supreme Court has never held that materiality requires the false statement to be made directly to the victims of the scheme. In fact, the Supreme Court held otherwise, finding that a scheme to defraud existed even when the scheme was unsuccessful and "*no one* relied on any misrepresentation." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647–48 (2008) (emphasis added).

Seidling argues that materiality under *Neder* requires "convergence": that the party who is deceived must be the same as the party that is defrauded of money or property by the mail fraud scheme. Though he deceived the Wisconsin small claims courts, the clerks of the court, and the process servers, Seidling claims he lacked the requisite intent to obtain money or property from the actual victims of the scheme. Since the misrepresentations were not directly communicated to the victims, and he did not intend for them to be communicated to the victims, Seidling argues that the misrepresentations had no tendency to influence the victims to part with their money or property and were therefore immaterial. Seidling relies on this Court's ruling in *United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993), to argue that the government is required to establish

that the defendant intended to obtain money or property from the same persons he deceived in order to prove a scheme to defraud.

Seidling misinterprets our holding in *Walters*. In *Walters*, a sports agent devised a scheme to sign college athletes as clients when they were negotiating for professional contracts. *Id.* at 1221. The agent hid the existence of the contracts from colleges and told the athletes to do the same because the contracts would make the athletes ineligible for college scholarships. *Id.* Unbeknownst to the agent, colleges routinely mailed forms to prospective scholarship recipients requesting that they verify their eligibility for the scholarships. *Id.* The agent was convicted of mail fraud charges, but his conviction was reversed on appeal. *Id.* at 1227. This Court found that the agent lacked the requisite intent, since the mailings were not foreseeable to him, he did not cause the mailings to be made, and the mailings did not advance his scheme. *Id.* at 1222. The essence of this Court's holding was that the mailings were not "essential to the [agent's] scheme" to defraud and he lacked the intent to receive money from the universities that granted scholarships to ineligible athletes who had signed with him. *Id.* The central issue in *Walters* was not one of convergence, but rather involved the defendant's knowledge of the use of the mail system and whether the universities were in fact victims of his scheme (whether the agent intended the money lost by universities who granted scholarships to ineligible athletes to end up in his own pocket). *Id.* at 1226.

In contrast, the uncontested facts of this case show that Seidling knowingly used the mail system to carry out his scheme and that the mailings were integral to the success of his

scheme to defraud victims of their money or property. Although Seidling never directly communicated with the victims that owned the money or property he sought, he deceived the Wisconsin small claims courts in an effort to defraud the individuals and one entity he named as defendants in the lawsuits. Seidling undoubtedly intended for the money or property lost by the victims to ultimately end up in his possession. In short, the small claims courts were merely a conduit in Seidling's scheme to defraud his victims. Our holding in *Walters* is consistent with the district court's decision.

This Court has found that mail fraud under 18 U.S.C. § 1341 does not require the defendant to communicate directly with his victims. In *United States v. Cosentino*, 869 F.2d 301 (7th Cir. 1989), this court addressed a scheme to defraud involving deception of a third-party. The defendants, heads of an insurance company, created a scheme to defraud the company of its assets by deceiving regulators at the Department of Insurance into believing the company was not approaching insolvency. *Id.* at 304. This Court noted that the deception of the regulators allowed the company to wrongfully remain in business, which negatively impacted the financial assets of its policyholders. *Id.* at 307. Although the decision did not specifically discuss the theory of convergence, this Court affirmed the defendants' mail fraud convictions even though the entity deceived was not the ultimate victim of the scheme that was deprived of money or property. Our holding in *Cosentino* shows that this Court does not interpret the mail

fraud statute as requiring convergence between the misrepre-
sentations and the defrauded victims.[2]

---

[2] The First, Fifth, Eighth, and Tenth Circuits have also interpreted § 1341 in
accordance with this Court's reasoning in *Cosentino*. The First Circuit in
*United States v. Christopher* stated that, "[w]e find no reason to read into the
[fraud] statutes an invariable requirement that the person deceived be the
same person deprived of the money and property by the fraud." 142 F.3d
46, 54 (1st Cir. 1998) (upholding the wire fraud conviction of a defendant
that deceived state insurance regulators, which resulted in the financial
losses of policyholders). In *United States v. McMillian*, the Fifth Circuit held
that "[t]he government was not required to prove that misrepresentations
were made directly to any of the victims." 600 F.3d 434, 449–50 (5th Cir.
2010) (upholding convictions for conspiracy and mail and wire fraud
offenses after defendants filed false financial reports with the Department
of Insurance resulting in risk and financial loss to policyholders). The
Eighth Circuit in *United States v. Blumeyer* held that "a defendant who
makes false representations to a regulatory agency in order to forestall
regulatory action that threatens to impede the defendant's scheme to obtain
money or property from others is guilty [of violating the mail fraud
statute]." 114 F.3d 758, 767–68 (8th Cir. 1997) (reinstating the guilty verdicts
of defendants including their convictions for mail and wire fraud when the
defendants made misrepresentations to the Department of Insurance, which
defrauded citizens of their right to an honest government and caused
financial losses to policyholders). Finally, the Tenth Circuit in *United States
v. Kennedy* stated that it is "neither necessary to allege nor prove that
the false pretenses, representations, or promises were actually made to
anyone, much less to each individual in the distinct mail fraud counts." 64
F.3d 1465, 1475–76 (10th Cir. 1995) (affirming defendant's convictions for
racketeering, mail fraud, and money laundering when the defendant made
fraudulent promises to investors to immediately purchase metal for them
at locked-in prices).

### B. Sentencing Adjustment for Acceptance of Responsibility

Section 3E1.1 of the United States Sentencing Guidelines provides for a two-point reduction of a defendant's offense level for acceptance of responsibility; the government may permit an additional point reduction when a defendant avoided trial by entering a guilty plea. Simply entering a guilty plea prior to trial does not automatically entitle a defendant for a reduction under § 3E1.1; the defendant bears the burden of demonstrating that he is entitled to the reduction by a preponderance of the evidence. *See, e.g., United States v. Akindele*, 84 F.3d 948, 956 (7th Cir. 1996).

Factual determinations of the district court regarding acceptance of responsibility under U.S.S.G. § 3E1.1 are reviewed by this Court for clear error. *United States v. Fudge*, 325 F.3d 910, 923 (7th Cir. 2003). The district court judge who makes sentencing determinations is due great deference because he or she is in a unique position to evaluate a defendant's words and demeanor in order to determine his acceptance of responsibility. *United States v. Gilbertson*, 435 F.3d 790, 798–99 (7th Cir. 2006). The findings of the trial judge in sentencing will only be reversed if the decision lacks any foundation or the court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Souffront*, 338 F.3d 809, 832 (7th Cir. 2003); *United States v. McIntosh*, 198 F.3d 995, 999 (7th Cir. 2000).

The probation officer and the United States Attorney's Office recommended a downward departure under § 3E1.1 for a total of a three-point reduction. The district court rejected

the recommendations of the probation office and the government and denied the adjustment for acceptance of responsibility. Seidling argues that this decision lacked any foundation and was not harmless error. First, Seidling contends that the victims did not provide factual information to support the pain and trauma experienced due to Seidling's scheme. Second, Seidling argues that the record fails to indicate that he lacked remorse to justify denying acceptance of responsibility. We find that the district court did not clearly err at sentencing and gave sufficient consideration to the issue before denying Seidling the downward adjustment for acceptance of responsibility.

Although Seidling entered a plea of guilty, he continuously rejected the contention that his conduct caused damage to the victims. For example, in his response to a letter written by victim Dori Stepan, Seidling stated, "I am sorry that Ms. Stepan feels the way she does." In no way does this response indicate that Seidling feels responsible for the pain Ms. Stepan was, and is still, experiencing. And there was Seidling's response to victim Mark Woychik's statement before the court that described in detail how Seidling's actions have impacted him and how Seidling continuously disregarded any difficulties he caused the courts or his victims. Seidling responded to the statement by saying, "Mr. Woychik exaggerated and misstated the events in St. Croix County Circuit Court." Again, Seidling's response avoids responsibility and actually redirects blame towards the victim. In denying a downward adjustment for acceptance of responsibility, the judge told Seidling,

> You did agree to waive a jury or court trial and
> proceed on the basis of stipulated facts, but you

have done nothing else to suggest that you believe you committed this—to suggest that you believe that you committed any real offense or that you feel any responsibility for the harm that you caused your victims.

In the district court opinion, the judge meticulously detailed the accounts of Seidling's victims to illustrate the impact of Seidling's scheme. Contrary to Seidling's contention that he was "punished" for choosing to remain silent at his sentencing, the judge considered all of the relevant information available during sentencing, particularly her observation of Seidling's words, his demeanor, and the statements of his victims, before determining that Seidling was not qualified to receive the three-level downward adjustment. Given Seidling's history of fraudulent behavior, his lack of remorse towards his numerous victims, and the extensive details of his scheme provided in the record, we find that the district court did not err in denying a reduction in sentencing for acceptance of responsibility.

### III.  CONCLUSION

In sum, although Seidling's false statements and misrepresentations were not made directly to the victims, they still satisfy the requisite materiality element of mail fraud and support Seidling's conviction. Additionally, the district court properly considered all relevant factors during sentencing and did not err when it denied Seidling a downward departure for acceptance of responsibility. For the foregoing reasons, the decision of the district court is AFFIRMED.