UNITED STATES of America,
Plaintiff-Appellee,

v.

Floyd PRICE, Defendant-Appellant.

No. 79–1480.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1979.

Decided Oct. 22, 1979.*

Opinion March 10, 1980.

---

* This appeal was originally decided by an unpublished order on October 22, 1979 pursuant to Circuit Rule 35. In response to a motion to publish, the court has decided to issue the decision as an opinion.

Patrick A. Tuite, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Cynthia Giacchetti, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and TONE, Circuit Judges, and GRANT, Senior District Judge.**

TONE, Circuit Judge.

Defendant Floyd Price, formerly an inspector for the Chicago Bureau of Electrical Inspection, was convicted by a jury on ten counts of extortion under color of official right in violation of the Hobbs Act, 18 U.S.C. § 1951(a).[1] Price's conviction arose out of a series of transactions in which he accepted illegal payments from electrical contractors while acting as an inspector.

---

** The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

1. 18 U.S.C. § 1951(a) provides, in pertinent part,

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by . . . extortion . . . shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(b)(2) defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." The present case involves only the "under color of official right" component of extortion under the Hobbs Act.

He was sentenced to eighteen months imprisonment on each count, the sentences to run concurrently.

On appeal, Price argues that his conviction should be reversed due to an insufficiency of evidence on seven counts, a violation of his Sixth Amendment right to cross-examine witnesses, the wrongful admission into evidence of similar past acts on his part, and the failure of the trial court to conduct a voir dire of the jury to determine whether they had been improperly influenced by viewing the transcript of a tape not admitted into evidence. We affirm the judgment of conviction on all counts.

A. *Insufficiency of the Evidence on Counts Six, Seven, Eight, and Ten*

Price first contends that the testimony of Lee Roy Harper, the government's principal witness on the above four counts of the indictment,[2] was insufficient as a matter of law to justify his conviction on these counts. Price's argument is in two parts. First, he contends that Harper was not legally entitled to the electrical permits that Price obtained for him, and that this fact removes Price's actions from the realm of "extortion" as prohibited by the Hobbs Act.[3] Second, Price argues that there was insufficient evidence to support a finding of an effect on interstate commerce, as is required by the Hobbs Act. Neither claim has merit.

■ In *United States v. Braasch*, 505 F.2d 139 (7th Cir. 1974), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975), we rejected the notion that, under the Hobbs Act, it matters "whether the public official induces payments to perform his duties or not to perform his duties, or even, as here, to perform or not to perform acts unrelated to his duties which can only be undertaken because of his official position." 505 F.2d at 151. The fact that Price provided permits to Harper in violation of the law will, thus, avail him nothing. He

was able to provide the permits due to his official position. The "motivation for the payment focus[ed] on the recipient's office." *Id.* As we noted in *Braasch*, "[t]hat such conduct may also constitute 'classic bribery' is not a relevant consideration." *Id.* Any statements in *United States v. Staszcuk*, 502 F.2d 875, 882–83 (7th Cir. 1974) (Campbell, J., concurring), *aff'd in part and rev'd in part on other grounds*, 517 F.2d 53 (7th Cir.) (in banc), *cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975), and *United States v. Pranno*, 385 F.2d 387, 390 (7th Cir. 1967), *cert. denied*, 390 U.S. 944 & 972, 88 S.Ct. 1028 & 1094, 19 L.Ed.2d 1132 & 1183 (1968), that are arguably contrary to our holding in *Braasch* are dicta and not controlling.

■ Price's argument concerning the jurisdictional nexus with interstate commerce is similarly flawed. In *United States v. Braasch*, 505 F.2d at 147 (quoting *United States v. DeMet*, 486 F.2d 816, 822 (7th Cir. 1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974)), we said: "Because Congress has seen fit to exercise its full power under the commerce clause, extortionate conduct having an arguably *de minimis* effect on commerce may nevertheless be punished." The record indicates that Harper bought copper wire and conduit for his business, including the jobs to which the offenses charged in the indictment related, and that such materials usually or always came into Illinois through interstate commerce. This was sufficient even though Harper's purchases may have been "infrequent." Nor does the record indicate a reason to suspect that an effect on interstate commerce was not "at least a 'realistic probability' at the time of the extortionate act." *United States v. Elders*, 569 F.2d 1020, 1024 (7th Cir. 1978) (quoting *United States v. Staszcuk*, 517 F.2d 53, 60 (7th Cir.) (in banc), *cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975)). The

---

**2.** Harper was also the chief witness on Count Nine of the indictment, but this count was dismissed during trial because it was fatally at variance with the prosecution's evidence.

**3.** Harper was not entitled to the permits because he was not licensed to do electrical work in Chicago. The permits obtained for him by Price evidently were issued in the name of an electrical contractor that was so licensed.

jurisdictional requirement of an effect on interstate commerce therefore was satisfied.

### B. Insufficiency of the Evidence on Counts Two, Three, and Five

■ The government's principal witness on these counts was Raymond Lumovic, an electrical contractor who testified that he paid Price money on three occasions. On the first of these occasions, Lumovic said he told Price that the money was not to induce him to overlook electrical code violations, but was rather "for the principle that in Chicago that I got to do it and that's all." Price contends that this testimony did not demonstrate that he coerced or induced the payments, and that his conduct in accepting them is therefore not violative of the Hobbs Act. We reject this contention for two reasons.

First, the jury could reasonably have concluded that Price did in fact induce Lumovic's payments. Lumovic testified that he informed Price of the purpose of the payments, and further testified that he had learned that if he did not pay off the electrical inspectors at once he would later have to pay "twice something for the same job." Price could have refused the money. He could have informed Lumovic that he had nothing to fear from electrical inspectors. Instead, Price accepted the money, and the jury was entitled to conclude that this action was simply the manifestation of an unspoken threat.

■ Although the foregoing is sufficient to dispose of this issue, we note that the cases cited by Price do not compel the conclusion that inducement or coercion is necessary to support a conviction for extortion under color of official right. In *United States v. Crowley*, 504 F.2d 992 (7th Cir. 1974), we found that,

> Extortion under color of official right . . . need not involve force or threat. If a victim reasonably feels compelled to pay money to . . . [an official] because of that . . . [official's] wrongful use of his official position for the purpose of obtaining money, the

requirements of the crime of extortion under color of official right are satisfied.

*Id.* at 995 n.5. Similarly, in *United States v. Braasch, supra*, 505 F.2d at 151, Mr. Justice Clark wrote for this court: "So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18 U.S.C. § 1951. That such conduct may also constitute 'classic bribery' is not a relevant consideration." Though some cases contain language arguably contrary to this position, *e. g., United States v. Adcock*, 558 F.2d 397, 403–04 (8th Cir.), *cert. denied*, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977), we adhere to the view expressed in *Braasch*. Price accepted money wrongfully and with the knowledge that it was paid to induce him to perform or to fail to perform official functions. This was enough to constitute extortion under the Hobbs Act.

### C. The Right to Cross-Examine Witnesses

■ Defendant next argues that the trial judge improperly restricted his cross-examination of the witness Harper by refusing to permit a question asking the witness whether he and federal officials had discussed his failure to file income tax returns. The ultimate goal of this line of inquiry, we are told, was to determine whether the witness had been influenced by an expectation or hope of leniency concerning his tax reporting omissions. The ruling was not reversible error. In *United States v. Amabile*, 395 F.2d 47, 50–52 (7th Cir. 1968), *vacated and remanded on other grounds sub nom., Giordano v. United States*, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969), we held that it was not error to refuse to permit a defendant to impeach a government witness with evidence that, *inter alia*, the witness was being investigated by federal tax authorities. The court there concluded that the attempt to inquire into tax matters was of "slight bearing on the bias and credibility" of the witness, 395 F.2d at 52 n.4 (quoting *District of Columbia v. Clawans*, 300 U.S. 617, 632, 57 S.Ct. 660, 665, 81 L.Ed. 843 (1937)), because the United States Attorney does not control Internal Revenue

Service investigations and because such investigations "are common and usually involve no threat of an indictment." 395 F.2d at 51. We believe *Amabile* controls the instant case. Price's counsel sought to impeach Harper with material even less indicative of bias than that present in *Amabile*. Harper was, apparently, not even the subject of an IRS investigation.

Also, in the case at bar the particular question asked was merely preliminary to the ultimate question of whether Harper had been influenced by an expectation or hope of leniency. The trial judge recognized the legitimacy of the ultimate inquiry into bias, as is demonstrated by the cross-examination of the witness Lumovic, and presumably would have permitted such an inquiry of Harper if it had been attempted. Thus, although we cannot concur in the trial judge's view that defense counsel's preliminary question concerning a meeting with government officials was improperly suggestive, the record as a whole does not support the claim of error.

Finally, we note that defense counsel was able to bring out the fact that Harper failed to file income tax returns in 1977 and perhaps in 1976. The jury was thus likely to infer that Harper's vulnerability to prosecution would tend to have a chastening effect on his testimony. We doubt that anything Harper might have said would have added much. In view of all this, we cannot say that Harper's Sixth Amendment rights were violated.

### D. *Evidence of Prior Similar Acts*

 Price next contends that the trial court twice erred in admitting evidence of Price's past acts of receiving money under color of office. The first of these alleged errors occurred when James Hargrett, an electrical contractor who testified with respect to Count Eleven, was permitted to testify that he had paid Price $400 in November of 1968 to secure approval of electrical work. This payment was not one of those charged in the indictment. The second alleged error occurred when Matthias Ott, an electrical contractor who testified concerning Counts One and Four, was allowed to testify that he paid Price money in 1972 to obtain approval for electrical work. This transaction also was not charged in the indictment. Price contends on appeal that testimony as to these two transactions was improperly received under Federal Rule of Evidence 404(b) because it was not relevant to any material issue in the case, because its probative value was outweighed by its prejudicial effect, and because the trial court did not sufficiently balance probative value against prejudicial effect and did not, *sua sponte*, instruct the jury on the limited purpose for which the testimony was admitted. We see no merit in these contentions.

 First, the evidence of prior similar acts was relevant to two material issues in the case. In a Hobbs Act prosecution for extortion under color of official right, the government must prove that the victim paid money to the defendant because of the defendant's official position. Evidence of the victim's state of mind is thus an essential element of the government's case. *See United States v. Braasch*, 505 F.2d 139, 151 (7th Cir. 1974), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975). In addition, the government must prove criminal intent on the part of the accused. *See United States v. Adcock*, 558 F.2d 397, 402 (8th Cir.), *cert. denied*, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). The prior acts tended to prove that the victims in question knew Price would accept money to perform official functions, and therefore that they made the payments charged in the indictment to influence Price's official actions. The prior acts also tended to prove that Price accepted the payments knowing their purpose, and thus possessed the requisite criminal intent.

Price contends, however, that his intent was not a real issue because his defense as to these counts was that he did not take the money, and not that he took it without the requisite intent. Price's counsel did suggest to the jury that intent was an issue, however. In his opening statement, defense counsel referred to the possibility that the jury might find payments in the case to have been "gifts" or "contributions." In cross-examining the witness Lumovic, counsel asked Lumovic if he knew whether Price

"was going to keep that money, give it to charity or whatever." Counsel also called two character witnesses for the defense and elicited from both the fact that Price was engaged in "fund raising" for social organizations. Even if the defense had not treated intent as a real issue, our decision in *United States v. Weidman*, 572 F.2d 1199, 1201–02 (7th Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), would allow the government to come forward with evidence concerning intent. In a Hobbs Act prosecution, no less than in a federal mail fraud prosecution, the government is required to prove criminal intent on the part of the accused.

In light of its probative value, we cannot say that the evidence of similar past acts was substantially outweighed by the danger of unfair prejudice. It is true that the trial judge did not expressly state his reasons in the balancing of probative value and unfair prejudice under Rule 403, Fed.R. Evid., which he should have done, *see United States v. Dolliole*, 597 F.2d 102 (7th Cir. 1979). We will not, however, presume the wrong reasons, when the correct ones are apparent.

Neither was the trial court required *sua sponte* to give a limiting instruction as to the use of the testimony. Defense counsel never requested such an instruction, but rather chose to stand or fall on the issue of admissibility; indeed, this stand was taken after the government had conceded the propriety of a limiting instruction. Though a limiting instruction would have been highly desirable, *see United States v. Braasch, supra*, 505 F.2d at 149, under such circumstances the trial court was not required to override the wishes of defense counsel. We find no error sufficient to warrant reversal in the admission of the prior acts.

### E. *Failure to Voir Dire the Jury*

Price's last allegation of error involves the following sequence of events: The trial judge admitted into evidence a tape recording of a conversation between Price and Harper. Copies of a transcript of the taped conversation were distributed to the jury. Upon playing the tape in open court, however, the judge ruled that the recording was incomprehensible and could not go into evidence. The tape was stopped and the transcripts were collected from the jury. While the jury had the transcript, however, they had an opportunity to read it or at least part of it. Defense counsel's request for a voir dire of the jury to determine whether they had been prejudiced by the contents of the transcript was denied by the judge.

In support of the proposition that the denial of the voir dire is reversible error, Price cites cases that involve documents not in evidence that were allowed to go to the jury room during deliberations. Here the tape and the transcript were withdrawn from the jury's consideration and the jury was instructed to disregard them. The transcript is like any item of evidence that is stricken with an instruction to disregard. The court is not required to interrogate jurors whenever evidence is stricken. The transcript did not, of course, go to the jury room. Moreover, defendant has pointed to nothing in the transcript that would have unfairly prejudiced him if the jury had disobeyed the court's instructions.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.