In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 14-1206 & 13-3844,

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHARON ANZALDI and STEVEN LATIN,

*Defendants-Appellants.*

---

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cr-820 — **Harry D. Leinenweber,** *Judge.*

---

ARGUED JANUARY 7, 2015 — DECIDED SEPTEMBER 4, 2015

---

Before RIPPLE, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Sharon Anzaldi, Phillip DeSalvo, and Steven Latin concocted an $8 million fraudulent tax scheme based on a sovereign citizen-type theory that the U.S. government holds hidden bank accounts for its citizens that can be accessed through various legal maneuvers. By filing false tax returns, Anzaldi, DeSalvo, and Latin requested more than $8 million for themselves and others in tax refunds. The IRS accepted five of their returns, paying out

more than $1 million in refunds before catching onto the scheme. A jury convicted all three of conspiracy to file false claims in violation of 18 U.S.C. § 286 and filing false claims upon an agency of the United States in violation of 18 U.S.C. § 287.

Anzaldi and Latin now appeal their convictions. Anzaldi claims the district court erred by not ordering that she undergo a competency examination pursuant to 18 U.S.C. § 4241(a) before representing herself pro se. We disagree. The district court was not required to order a competency examination because it did not have reasonable cause to believe Anzaldi was suffering from a mental defect rendering her unable to understand the charges against her or assist in her defense. We also reject Anzaldi's argument that the district court erred by admitting evidence of how she structured her fees to be under $10,000. This evidence helped prove her intent to defraud and to rebut her good faith defense, and was therefore admissible under Federal Rule of Evidence 404(b). Finally, Latin claims the district court erred by not instructing the jury that willfulness was required to convict, and instead instructing that the defendants had to have acted "knowingly." We do not agree. Willfulness is not an element of the charged offenses and, as we have repeatedly held, proving guilt under the false claims statutes does not require a finding of willfulness. We therefore affirm the convictions.

## I. BACKGROUND

In late 2008 and early 2009, Sharon Anzaldi, Phillip De-Salvo, and Steven Latin were in significant financial trouble. They began researching "redemption theory," a sovereign

citizen-type[1] view which, as the government explains, holds that the federal government went bankrupt when it abandoned the gold standard in 1933 and began converting the physical bodies of its citizens into assets against which it could sell bonds. A tenet of this view is that knowledgeable citizens can redeem these assets and, through manipulating them in various imagined accounts, use them to their advantage.

In accordance with this bizarre theory, Anzaldi, DeSalvo, and Latin entered into a tax fraud scheme to solve their financial troubles. They filed 1099-Original Issue Discount ("OID") tax forms which reported their debt as interest income. They then reported near-equal amounts as withheld taxes, and thereby claimed substantial refunds. Anzaldi and DeSalvo also helped other individuals file false claims for tax refunds. For these "services," Anzaldi expected to be paid ten percent of any refund amount obtained, and required that her fees be paid in checks under $10,000, as anything larger might draw government scrutiny.

All told, Anzaldi, DeSalvo, and Latin submitted fourteen fraudulent tax returns, requesting more than $8 million for themselves and others in tax refunds. The IRS accepted five of these returns, paying out more than $1 million in refunds before catching onto the scheme. In connection with these activities, Anzaldi, DeSalvo, and Latin were arrested and indicted on fifteen counts of conspiracy to file false claims in violation of 18 U.S.C. § 286, and at least one count each of

---

[1] Individuals claiming to be "sovereign citizens" assert that the federal government is illegitimate and insist they are not subject to its jurisdiction. *See United States. v. Jonassen*, 759 F.3d 653, 663 (7th Cir. 2014).

filing false claims upon an agency of the United States in violation of 18 U.S.C. § 287.

The defendants made their initial appearances in district court on November 18, 2011. DeSalvo and Latin, represented by counsel, entered not guilty pleas. Anzaldi elected to proceed pro se, leading the court to engage in a lengthy colloquy with her about the right to counsel and the dangers associated with proceeding pro se. The court also inquired about Anzaldi's background to ensure she was representing herself "voluntarily and intelligently." Anzaldi stated that she finished high school and some college, was a real estate appraiser for 28 years, and studied law as a hobby. She also informed the court that she understood the charges against her and the maximum possible penalties. The court was satisfied with Anzaldi's responses and she entered a plea of not guilty.

Following this initial colloquy, the government made additional requests for a hearing to determine whether Anzaldi was competent to proceed pro se and whether her waiver of her right to counsel was knowing and voluntary. Anzaldi opposed these motions. On multiple occasions, the district court asked Anzaldi if she understood the charges against her and the maximum penalty she was facing. Anzaldi indicated that she did. The district court never made a formal finding on Anzaldi's competency and declined to hold a competency hearing, which now forms a basis for Anzaldi's appeal. The court did, however, appoint standby counsel, who assisted Anzaldi with her defense. Standby counsel also stated repeatedly that Anzaldi was competent to stand trial and to represent herself.

Before trial, the district court considered two motions relevant to the current appeal. On April 8, 2013, in accordance with Federal Rule of Evidence 404(b)(2), the government gave notice that it intended to introduce evidence (in the form of witness testimony) of Anzaldi's attempts to structure her "fees" in amounts under $10,000, so as not to raise any "red flags." The government argued this evidence was admissible to show her intent to deceive and to refute Anzaldi's "good faith" defense. The district court agreed and allowed the evidence to be admitted. Later, DeSalvo and Latin filed a motion requesting the jury be instructed that "willfulness" was an element of the crimes for which they were charged. The district court refused, stating "it is clear that the requisite mental state to sustain a conviction under 18 U.S.C. §§ 286, 287, is 'knowledge,' not 'willfulness.'"

Trial commenced in June 2013. The government presented substantial evidence against Anzaldi, DeSalvo and Latin, including email exchanges among the three demonstrating they were aware of the illegality of their actions. Anzaldi, acting pro se, was an active participant in her defense. She gave an opening statement, cross-examined witnesses, offered exhibits to rebut the government's case, and consulted with standby counsel. Her strategy was to convince the jury she did not intend to defraud the government because she acted in good faith.

At the close of evidence, Latin and DeSalvo reiterated their request for a willfulness instruction, which the district court denied. It instructed the jury that the defendants had to have acted "knowingly" but that if defendants honestly believed in the truth of their position, then the jury must find them not guilty.

The jury convicted Anzaldi, DeSalvo, and Latin on all counts. Latin was sentenced to eighteen months' imprisonment and DeSalvo to thirty months. Anzaldi continued to represent herself at sentencing, but standby counsel addressed the court on her behalf, referring to Anzaldi's views on tax law as "delusional." Counsel did not, however, request that a competency examination be ordered. Anzaldi was sentenced to sixty-three months' imprisonment. Anzaldi and Latin now appeal their convictions.[2]

## II. ANALYSIS

Anzaldi and Latin challenge their convictions on three grounds: (1) that the district court erred by not ordering that Anzaldi undergo a competency examination, (2) that the district court erred by refusing to include a willfulness instruction to the jury, and (3) that it was error for the district court to admit evidence of how Anzaldi structured her fees. We consider each of these arguments below.

### A.    Declining to Order Competency Evaluation Was Not an Abuse of Discretion

A district court is required to order a hearing to determine a defendant's mental competency in limited circumstances. 18 U.S.C. § 4241(a). These circumstances exist when the court has "reasonable cause to believe" the defendant may be suffering from a mental disease or defect that either prevents her from understanding the nature and consequences of the proceedings against her, or renders her unable to assist in her defense. *See id.*; *United States v. Grimes*, 173

---

[2] DeSalvo initially challenged his conviction, but has withdrawn his appeal.

F.3d 634, 635–36 (7th Cir. 1999). "Because the district court is in the best position to assess the mental status of a defendant," we review this determination for abuse of discretion. *United States v. Jonassen*, 759 F.3d 653, 659 (7th Cir. 2014) (citing *United States v. Alden,* 527 F.3d 653, 659 (7th Cir. 2008)).

Although it is uncontested that Anzaldi has no history of mental illness, she contends there was evidence before the district court that she was suffering from delusions, paranoia, or some other mental defect. She points to statements by the government that Anzaldi's pro se pre-trial motions espoused "nonsensical" legal theories, as well as its requests that the district court evaluate Anzaldi's competency. She also refers to statements made by her standby counsel at sentencing explaining that he had looked up Anzaldi's behavior in the Journal of Psychiatric Diseases and concluded she was "delusional about [her] OID scheme and … what she did." Anzaldi contends that based on this evidence, the district court was required to order a competency hearing sua sponte under 18 U.S.C. § 4241(a).

We disagree that the district court had reasonable cause to believe Anzaldi may have been suffering from a mental disease or defect preventing her from understanding the nature and consequences of the proceedings against her, or rendering her unable to assist in her defense. Virtually all of the purported evidence of mental illness put forward stems from Anzaldi's decision to pursue a sovereign citizen-type legal defense. Anzaldi's frivolous pre-trial motions, for example, were based on boilerplate legal templates made available online by sovereign citizen groups. Likewise, standby counsel's suggestion at sentencing that Anzaldi was "delusional" directly referred to her dogged adherence to

the redemption theory and her pursuit of a sovereign citizen-type legal defense strategy. But as we have held, a defendant's adherence to a discredited legal theory does not create "reasonable cause" to believe she suffers from a mental defect. *See Jonassen*, 759 F.3d at 660; *Alden*, 527 F.3d at 659–60; *United States v. James,* 328 F.3d 953, 955 (7th Cir. 2003).

Our decision in *Jonassen* is squarely on point. There, the defendant, like Anzaldi, advanced a "sovereign-citizen defense," electing to proceed pro se "to avoid losing the ability to assert that he was 'a natural person, common law citizen' over whom the court lacked jurisdiction." 759 F.3d at 657, 660. We held that the pursuit of this theory did not require the district court to hold a competency examination, noting that "adherence to bizarre legal theories, whether they are sincerely held or advanced only to annoy the other side, does not imply mental instability or concrete intellect … so deficient that trial is impossible." *Id.* at 660 (citing *James*, 328 F.3d at 955; *Alden*, 527 F.3d at 659–60).

We reached a similar conclusion in *James*. The defendant there had "offered the 'defense' that his ancestors came from Africa, that he is therefore a Moorish national, and that as a result he need obey only those laws mentioned in an ancient treaty between the United States and Morocco." 328 F.3d at 954. Again, we held that the defendant's reliance on this legal theory did not require the district court to hold a competency hearing under § 4241, noting that many litigants "articulate beliefs that have no legal support," but that this did not equate to mental incompetence or demand that a competency hearing be ordered. *Id.* at 955. We also explained that while "[o]ne person with a fantastic view may be suspected

of delusions; two people with the identical view are just oddballs." *Id.* at 956.

Despite Anzaldi's suggestion to the contrary, the record clearly demonstrates she understood the charges against her and assisted in her defense—the key considerations under § 4241. *See Alden*, 527 F.3d at 659. Each time the government requested a hearing to determine whether Anzaldi was competent, Anzaldi objected, telling the district court at one point that "there would be no reason that I would be incompetent or considered that. I'm quite capable." Standby counsel also objected to the government's request for a competency hearing, stating, "I would object to that at this point, too. My discussion with her yesterday was very cordial and informative." Standby counsel also told the district court that Anzaldi understood "the peril of going ahead by herself." In deciding not to order a competency examination, the district court was entitled to consider the statements made by both Anzaldi and standby counsel affirming Anzaldi's ability to understand the charges against her and to assist in her defense. *See United States v. Savage*, 505 F.3d 754, 760 (7th Cir. 2007) ("Significant weight is given to counsel's representations concerning his client's competence and counsel's failure to raise the competency issue."); *United States v. Morgano*, 39 F.3d 1358, 1374–75 (7th Cir. 1994) (district court entitled to rely on statements made by pro se defendant and his standby counsel to support finding no reasonable cause existed to believe defendant was mentally incompetent).

The record also shows Anzaldi actively participated in her defense at trial. She gave an opening statement, cross-examined witnesses, offered exhibits to rebut the govern-

ment's case, and consulted with standby counsel. Such meaningful participation in the judicial process indicates that she was competent to assist in her defense. *See United States v. Berry*, 565 F.3d 385, 389 (7th Cir. 2009) (pro se defendant's performance—lodging objections, cross-examining witnesses, and making opening and closing statements—demonstrated mental competence). Anzaldi also advanced nuanced legal arguments, attempting to negate an essential element of her crime by submitting to the jury that she had acted in good faith. She maintained, for example, that she had diligently researched the tax positions she had taken and concluded they were legitimate, and that she asked the IRS for guidance to the extent these tax positions were erroneous. This sort of argumentation reflected an in-depth understanding of the charges against her, and also justified the district court's conclusion that a competency hearing was not required. *See Alden*, 527 F.3d at 659.

The district court was also entitled to rely on all of its informal observations of Anzaldi over the course of two years, during which time Anzaldi exhibited no behaviors suggestive of mental illness. *See United States v. Weathington*, 507 F.3d 1068, 1073 (7th Cir. 2007) (finding district court entitled to "determine informally whether reasonable cause exists by observing the defendant's demeanor and assessing his statements during … interactions with the court."); *Grimes*, 173 F.3d at 636; *cf. United States v. Auen*, 846 F.2d 872, 874–76 (2d Cir. 1988) (remanding case for competency examination where defendant made multiple threats and affirmatively represented that "he did not 'understand'" why he was being detained); *United States v. Arenburg*, 605 F.3d 164 (2d Cir. 2010) (remanding case for competency examination where defendant had been previously diagnosed with paranoid

schizophrenia). The district court also could have considered the level of sophistication required to commit the crimes of which Anzaldi was convicted. Evidence showed Anzaldi filed numerous false tax returns seeking millions of dollars in fraudulent refunds, convinced several individuals to adopt her fraudulent tax strategy, and took various steps to conceal her crimes. *See United States v. Abdulmutallab*, 739 F.3d 891, 902 (6th Cir. 2014) (rejecting need for competency hearing based on complex nature of crimes at issue).

Anzaldi further suggests that even if she were competent to stand trial, she was not competent to do so pro se. This argument is without merit. The Constitution does not create two standards for competence—one for standing trial and the other for self-representation. In *Indiana vs. Edwards*, 554 U.S. 164 (2008), upon which Anzaldi relies, the Supreme Court held simply that "the Constitution permits *States* to insist upon representation by counsel for those competent enough to stand trial … but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." 554 U.S. at 178 (emphasis added). But as we have noted, *Edwards* addresses "what the Constitution permits—limitation of the self-representation right in connection with pleading guilty and presenting a trial defense, respectively—not what it mandates." *United States v. Berry*, 565 F.3d 385, 391 (7th Cir. 2009). As a result, *Edwards* simply means that "the Constitution *may* have allowed the trial judge to block [Anzaldi's] request to go it alone, but it certainly didn't require it." *See id.* (citation omitted). In other words, even if the district court had doubts about Anzaldi's abilities, nothing required the court to prohibit her from proceeding pro se once she understood the charges against her and was able to assist in

her defense. Moreover, even if *Edwards* requires district courts to appoint "counsel in certain cases—a dubious reading—the rule would only apply when the defendant is suffering from a 'severe mental illness.'" *Id.* And there is no evidence Anzaldi was suffering from a severe mental illness.

Accordingly, we find that the district court did not abuse its discretion by declining to order Anzaldi to undergo a competency examination.

### B. No Error in Refusing to Give Willfulness Instruction

Latin challenges the district court's jury instructions regarding the required mental state for violating 18 U.S.C. §§ 286 and 287. He claims the defendants had to act "willfully" for the jury to convict, but that this was not part of the instruction.

We review such challenges to jury instructions in two steps. *United States v. Brown*, 726 F.3d 993, 997 (7th Cir. 2013). At step one, we review de novo "whether a particular jury instruction accurately summarize[s] the law." *Id.* If it does, we examine "the district court's particular phrasing of the instruction for abuse of discretion." *Id*. At step two, we will reverse "only if it appears both that the jury was misled and that the instructions prejudiced the defendant." *Id*. The district court "is afforded substantial discretion with respect to the precise wording of instructions so long as the final result, read as a whole, completely and correctly states the law." *United States v. DiSantis*, 565 F.3d 354, 359 (7th Cir. 2009).

Sections 286 and 287, under which Anzaldi, DeSalvo, and Latin were convicted, are general false claims statutes, which are not dependent on tax filing. Section 286 is a conspiracy

charge that prohibits entering into "any agreement … to defraud the United States." 18 U.S.C. § 286. Section 287, in turn, forbids any person from making or presenting a claim to the United States when such person "know[s] such claim to be false, fictitious, or fraudulent." 18 U.S.C. § 287. Neither statute mentions willfulness.

By contrast, certain violations of the tax code do require a willful mental state. *See, e.g.,* 26 U.S.C. § 7206(1) ("Any person who … [w]illfully makes and subscribes any return, statement, or other document … which he does not believe to be true and correct … shall be guilty of a felony… ."). As the Supreme Court has explained, Congress imposed a willfulness requirement for certain tax offenses because of the complex nature of the tax system, which makes it "difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws*." Cheek v. United States*, 498 U.S. 192, 199–200 (1991) ("Congress has … softened the impact of the common-law presumption [that ignorance of the law is no defense] by making specific intent to violate the law an element of certain federal criminal tax offenses.").

Relying on *Cheek*, Latin argues that even though the government charged the defendants in this case with violations of 18 U.S.C. § 286 (false claims conspiracy) and with individual counts of violating 18 U.S.C. § 287 (making a false claim)—rather than with submission of false tax returns as prohibited by the tax code—it should have been required to prove willfulness because the false claims at issue were made in the course of filing tax returns.

We decline to extend the logic of *Cheek*—which dealt exclusively with a conviction under the tax code, 498 U.S. at

200—to cases charged under the false claims statutes and re-affirm what we have repeatedly held in cases involving arguments similar to Latin's: The government "need not prove that the defendant acted willfully" to prove a violation under the false claims statutes at issue here, which only require proof that "a defendant made a claim upon the United States knowing that the claim was false." *United States v. Ferguson*, 793 F.2d 828, 831 (7th Cir. 1986) (finding that because tax-payer's characterization of tax as "excise tax" was patently false and groundless, taxpayer violated 18 U.S.C. § 287); *United States v. Catton*, 89 F.3d 387, 392 (7th Cir. 1996) ("[W]illfulness need not be proved [in a Section 287 case].").

As our sister circuits have held, the false claims statutes and the tax code "give rise to two different offenses," even when "the offenses arise out of the same transaction(s)." *United States v. Boyd*, 378 F. App'x 841, 846 (10th Cir. 2010) (unpublished); *see also United States v. Jirak*, 728 F.3d 806, 813–14 (8th Cir. 2013) (noting distinction between violations of the tax code, which require a finding of willfulness, and a violation of Section 287, which does not). And there are good reasons for this distinction. First, as we stated in *Catton*, "it is implicit in the filing of a knowingly false claim that the claimant intends to defraud the government, and hence unnecessary to charge willfulness separately." 89 F.3d at 392. As we emphasized, "this simply underscores the importance of the government's proving the defendant's knowledge that the claim is false." *Id*. Second, requiring the government to prove willfulness in a tax-related case would force it to charge all tax-related offenses under the tax code, even when other criminal statutes apply. This is inconsistent with well-established rule that when multiple criminal statutes apply to the same conduct, a prosecutor has discretion to choose

under which statute to proceed. *E.g.*, *United States v. Batchelder*, 442 U.S. 114, 123–24 (1979) ("[This Court] has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants… .").

In light of this discussion, we find that it was not error for the district court to refuse to include a willfulness instruction. But we also note that any instructional error here would have been harmless. The pattern instruction for a tax code violation focuses on a defendant's lack of subjective good faith. *See* 7TH CIR. PATTERN FED. JURY INSTRUCTIONS, at § 6.11 (2012 ed.) ("A person does not act willfully if he believes in good faith that he is acting within the law, or that his actions comply with the law. Therefore, if the defendant actually believed that what he was doing was in accord with the [tax] laws, then he did not willfully [make a false statement on a tax return]."). But the district court's instructions addressed this, instructing the jury that the defendants' "good faith" would preclude a guilty verdict. There would be no meaningful difference between a willfulness instruction under the tax code and the instructions the district court gave in this case. *See Catton*, 89 F.3d at 392 ("What 'willfully' adds to 'knowingly' in a section 287 case is obscure. Unlike a knowingly false statement, which if immaterial might not reflect a guilty intent, the making of a knowingly false *claim* might seem inherently willful, inherently intended to defraud, making an instruction on willfulness otiose.").

### C.     No Abuse of Discretion in Admission of Anzaldi's Fee Structuring Evidence

Anzaldi claims the district court abused its discretion by allowing in testimony submitted by the government regarding Anzaldi's fee structuring under Federal Rule of Evidence 404(b). Specifically, two witnesses testified regarding Anzaldi's attempt to keep individual check amounts under $10,000. According to one of the witnesses, Anzaldi requested three different checks, each under $10,000, because a single check for $25,000 "was a red flag" that could trigger government scrutiny. We review the district court's decision to admit this evidence for abuse of discretion. *United States v. Johnson*, 624 F.3d 815, 819 (7th Cir. 2010).

Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts for the purpose of proving a person's character or propensity to behave in a certain way. Fed. R. Evid. 404(b)(1). However, the rule permits the use of such "other-act" evidence for other purposes, e.g., to show motive, intent, preparation, plan, knowledge or absence of mistake. Fed. R. Evid. 404(b)(2). As we recently explained, other-act evidence may only be introduced "when its admission is supported by some propensity-free chain of reasoning." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc) (citing *United States v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013)). To determine this, courts must ask not just "*whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose." *Id.*

The probative value of such other-act evidence must then be weighed against its potential prejudice. *Id.* at 857; *see also* Fed. R. Evid. 403 (authorizing district court to exclude "rele-

vant evidence" if its probative value is "substantially out-weighed by a danger of … unfair prejudice"). Evidence is "unduly prejudicial" if it creates a risk that invites an irrational emotional response from the jury. *United States v. Miller*, 688 F.3d 322, 327 (7th Cir. 2012).

We do not believe the district court abused its discretion by admitting evidence regarding Anzaldi's attempt to structure her fees in a way she believed would circumvent government attention. The propensity-free chain of reasoning is clear. Anzaldi's attempted fee structuring tended to prove her intent to defraud the United States because she would not attempt to hide from the government her involvement with these tax returns if she truly believed her tax positions were legitimate. This evidence also helped negate her asserted defense that she had acted in good faith. The district court recognized this propensity-free chain of reasoning when it granted the government's pre-trial motion to admit evidence of Anzaldi's fee structuring, explaining the evidence "would be directed toward establishing an absence of good faith regardless of the way Anzaldi was paid." This is precisely the type of logical progression anticipated by *Gomez. See* 763 F.3d at 856; *see also United States v. Ryan*, 213 F.3d 347, 351 (7th Cir. 2000) (defendant's efforts to conceal participation in fraudulent scheme is circumstantial evidence of an intent to defraud and is admissible to rebut defendant's asserted defense).

We also find that the probative value of the fee-structuring evidence outweighed any potential prejudice. As the district court noted, evidence regarding fee structuring is not the type of evidence that "invites an irrational emotional response." Furthermore, the district court gave a limiting in-

struction to the jury, stating "[y]ou may consider this evidence [of the free structure] only on the question of defendant Sharon Anzaldi's intent, preparation, plan, knowledge, and absence of mistake. You should consider this evidence against defendant Sharon Anzaldi only for this limited purpose." This instruction helped reduce concerns about any prejudice associated with the fee structuring evidence. *See United States v. Molton*, 743 F.3d 479, 483 (7th Cir. 2014).

And again, we note that any error in admitting this testimony would have been harmless, as the evidence against Anzaldi was overwhelming. *See United States v. Oros*, 578 F.3d 703, 709 (7th Cir. 2009) (quoting *United States v. Jarrett*, 133 F.3d 519, 526 (7th Cir. 1998)) (admission of inadmissible evidence harmless "if it did not have a substantial and injurious effect on the jury's verdict").

### III. CONCLUSION

The judgment of the district court is AFFIRMED.