In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2962

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT KOLBUSZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 782 — **John Z. Lee**, *Judge.*

ARGUED SEPTEMBER 20, 2016 — DECIDED SEPTEMBER 21, 2016

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* A jury convicted Robert Kolbusz of six counts of mail or wire fraud, see 18 U.S.C. §§ 1341, 1343, and he was sentenced to 84 months' imprisonment (the same term on each count to run concurrently) plus about $3.8 million in restitution.

Kolbusz, a dermatologist, submitted thousands of claims to the Medicare system and private insurers for the treat-

ment of actinic keratosis, a skin condition that sometimes
leads to cancer. He received many millions of dollars in
payments. The evidence at trial permitted a reasonable jury
to conclude that many if not substantially all of these claims
could not have reflected an honest medical judgment—and
that the treatment Kolbusz claimed to have supplied may
have failed to help any patient who actually had actinic kera-
tosis. We need not recount the evidence. Kolbusz put on a
vigorous defense, but the record permitted the jury to find
that he committed the crimes as charged.

His lead appellate argument is that the district judge con-
structively amended the indictment by permitting the prose-
cutor to present evidence that he submitted false claims on
behalf of more than six patients. The indictment charged six
particular frauds, so that must be the limit of the evidence,
the argument runs. Yet the indictment charged a *scheme* to
defraud (that's what §1341 and §1343 cover). The prosecutor
was entitled to prove the scheme as a whole, and not just the
six exemplars laid out in the indictment. See, e.g., *United
States v. Phillips*, 745 F.3d 829, 831–33 (7th Cir. 2014); *United
States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003). Kolbusz
does not point to any decision holding that the prosecution
is forbidden to show that a scheme has more victims than
the number of counts in the indictment, and we could not
find such a decision in an independent search.

After his arrest and indictment, Kolbusz continued to
submit claims to Medicare, and many of these were paid. He
contends that the judge erred in preventing him from intro-
ducing evidence to that effect. But the judge did not abuse
his discretion in excluding this evidence, which has more to
say about the (lack of) care with which Medicare intermedi-

aries examine physicians' claims than about the validity of the charges against him. Kolbusz says that the evidence would demonstrate his "good faith," but we do not understand how—or for that matter why "good faith" in the abstract matters. See *United States v. Blagojevich*, 794 F.3d 729, 738–39 (7th Cir. 2015). Kolbusz's state of mind when he was submitting claims between 2003 and 2010 (the period covered by the criminal charges) was relevant; his state of mind in later years was not. It would have been regrettable to divert the trial into an examination of Medicare's claims-processing procedures in 2013 and 2014, rather than whether Kolbusz knew that he was submitting false claims in 2010 and earlier.

Finally, Kolbusz contends that, when resolving civil litigation that grew out of his claims for reimbursement, some of the insurers agreed to waive restitution. He contends that payments from these insurers should be excluded from the district court's calculation. The problem with this argument is that the United States was not a party to any of the contracts on which Kolbusz relies. The award of restitution was entered in litigation between Kolbusz and the United States; contracts between Kolbusz and third parties cannot control. So the Supreme Court held in *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), when concluding that arbitration agreements between employees and employers do not affect the national government, when it sues as employees' champion. The Court concluded that private agreements do not bind the United States. That's equally true when the United States seeks a restitution award, and so multiple courts have held. See, e.g., *United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011); *United States v. Gallant*, 537 F.3d 1202, 1250 (10th Cir. 2008); *United States v. Karam*, 201 F.3d 320 (4th Cir. 2000);

*United States v. Parsons*, 141 F.3d 386, 393 (1st Cir. 1998); *United States v. Sheinbaum*, 136 F.3d 443, 448–49 (5th Cir. 1998).

AFFIRMED