In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-2969

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL THOMAS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:18-cr-00045-JD-MGG-1 — **Jon E. DeGuilio**, *Chief Judge.*

_____

ARGUED SEPTEMBER 21, 2020 — DECIDED JANUARY 22, 2021

_____

Before WOOD, BRENNAN, and SCUDDER, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Michael Thomas set fire to numerous properties in a mobile home park and then used the mail to collect insurance money. The government charged Thomas with mail fraud under 18 U.S.C. § 1341, which requires proof of a "scheme to defraud." At trial Thomas argued the fires were not part of a scheme because they were not a chain of continuous and overlapping events, but rather discrete

episodes of alleged criminality, so evidence of the fires as "other acts" was improperly admitted.

A jury convicted Thomas, and on appeal he argues that all but one of the fires were inadmissible character evidence. But Thomas was charged with mail fraud, not arson. We conclude the district court properly decided that six of the fires were part of Thomas's scheme and not "other acts" at all. The district court also properly admitted evidence of another fire that, although too far removed in time to be part of the scheme, was evidence of Thomas's *modus operandi*. So we affirm.

## I. Background

The Born's mobile home park is a one-square-mile residential community of less than one hundred dwellings, located in North Judson, Indiana. The park does not experience many fires—aside from those in this case, only three in the last 26 years. Over about nine years, however, Thomas has been connected to eight blazes there.

The first fire started just before 10 p.m. the night of September 17, 2004 in a mobile home Thomas owned at 2691 Julia Drive. Thomas's uncle said he and Thomas were out at a bar when Thomas heard about the fire. Later Thomas confided in his friend Kyle Nissen that Thomas had a family member start the fire. At the time the authorities could not determine the cause of the fire. Less than three weeks before, Thomas took out an insurance policy on the home. He also secured a second policy with another company that went into effect September 17, 2004—the day of the fire. When Thomas requested payment, the insurance companies paid him $75,000.

The next fires occurred on four properties during the night of November 14, 2010. Thomas had recently purchased a new mobile home with a garage at 5081 South 275 West. He originally planned to lease the property to tenants. Thomas also could access the mobile home owned by his mother-in-law at 5326 South A Street. In the months leading up to the fires, Thomas pressured his former wife Jennifer to purchase insurance on both properties, but she refused. One day Thomas handed her a phone with the insurance company already on the line. Jennifer capitulated and purchased policies on these two residences. When Jennifer's mother found out about the new policy taken out on her home, she vehemently objected and convinced Jennifer to tell Thomas that she planned to cancel the policy. That conversation took place on November 14th.

According to Nissen, he and Thomas had already been planning to burn the two homes and later that same day Thomas urgently approached him with the news that Jennifer wanted to cancel the policy. Thomas told Nissen that they needed to act quickly and that they were "going to do all four." The "four" referred to fires at Thomas's new property, his mother-in-law's home, and two abandoned mobile homes within Born's located at 2729 Air Stream Court and 5370 Holiday Street. The two abandoned homes were included to divert suspicion from the fires at properties connected with Thomas. Thomas and Nissen each burned two properties. The authorities determined that all four fires were intentionally set. Nevertheless, Thomas collected over $50,000 from the two insurance policies.

Another fire occurred in January 2013. In 2012 Thomas purchased a property located at 5101 South 275 West. He

hoped to sell it at a profit, but he did not succeed. In December 2012 he took out an insurance policy on the property. Before the insurance was set to expire, Thomas told Nissen that the property "had to go." The home at 5101 South 275 West burned and Thomas filed a claim and collected $60,000 in insurance proceeds.

The final fire occurred three months later, on April 17, 2013. In February of that year Thomas had renewed the insurance policy for his property at 2691 Julia Drive, the site of the first fire. Around this time Thomas and Jennifer separated. In early April Thomas told Jennifer "you better get out what you want that's important to you." Thomas then contacted Nissen and asked if he could help move a motorcycle out of the home. Hours later the home caught fire, and Thomas, who was at the house when the fire started, briefly checked into the hospital with smoke inhalation. Fire department officials came to the scene and checked the house for "hot spots" where rekindling—a second or subsequent ignition—might happen, but they found none. Eight hours later, after the firefighters had left, Thomas's home again caught fire. Thomas claimed both blazes were caused by a pizza box he set on top of the stove. An Indiana fire marshal testified that the second fire at the property was intentionally set.

After the fire Jennifer and Thomas reunited briefly. Thomas enlisted Jennifer to make insurance claims for items "lost" inside the house. He told Jennifer to look online and "max out" the number of items they could claim. For this fire Thomas received four checks totaling $426,227.31 in insurance money. These four checks served as the basis for four counts of mail fraud on which Thomas was indicted in April 2018.

The indictment charged a scheme that included all these fires, spanning from 2004 to 2013.

Before trial Thomas moved to strike portions of the indictment as surplusage. That motion asked the district court to delete paragraphs in the indictment referring to the fires in 2004, 2010, and January 2013. The magistrate judge granted the motion in part, removing a paragraph referencing the two diversionary fires in 2010, reasoning that the government had not sufficiently established that these fires were part of the charged scheme. The magistrate judge retained the paragraphs referring to the 2004 fire, deciding it was properly part of the scheme.

Closer to trial Thomas moved in limine to exclude evidence of the 2004 fire on Julia Drive and the two 2010 "distractor" fires. The district court ruled that the 2010 fires were part of the scheme and did not implicate Federal Rule of Evidence 404(b). The court also concluded that the 2004 fire was too far removed in time to be part of the scheme, but that it was admissible as *modus operandi* evidence and to prove identity. A jury convicted Thomas on all counts and he was sentenced to 90 months' imprisonment.

## II. Discussion

Thomas asks that his convictions be reversed because the district court improperly admitted as character evidence the 2004 fire, the 2010 fires on his properties, the two 2010 diversionary fires, and the January 2013 fire. We begin with an overview of Federal Rule of Evidence 404(b) and then evaluate the district court's decisions to admit certain fires as part of the scheme and to exclude the 2004 fire from the scheme.

Rule 404(b)(1) states "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." This general prohibition of "character evidence" is supplemented by section (b)(2) that states proffered evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Courts have long policed the sometimes blurry line between evidence that must be excluded under Rule 404(b)(1) and evidence that may be admitted under Rule 404(b)(2).

In *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014), this court articulated a general framework for analyzing Rule 404(b) cases, jettisoning a previous multi-factor test. First, the proponent of the other acts evidence must show, through a chain of propensity-free inferences, that the evidence is relevant for a reason other than propensity. *Id*. at 860. Second, the court must determine under Federal Rule of Evidence 403 whether the probative value of the evidence is substantially outweighed by the prejudicial effect of the evidence on the defendant, paying close attention to whether the fact the evidence helps establish is disputed. *Id*. Third, even if evidence was improperly admitted, the court must conduct a harmless error analysis. *Id*. at 863. Of course, before we apply the analysis from *Gomez* the proof must actually be evidence of other acts. "Direct evidence of a crime is almost always admissible against a defendant" and is not "other act evidence." *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010); *United States v. Bradford*, 905 F.3d 497, 506 (7th Cir. 2018) ("Evidence that 'tend[s] to prove the elements of the offense' does not violate Rule 404(b).").

Thomas was charged with mail fraud under 18 U.S.C. § 1341, which requires "(1) a scheme or artifice to defraud, (2) the use of the mailing system for the purpose of executing the scheme, and (3) the defendant's participation in the scheme with the intent to defraud." *United States v. Seidling*, 737 F.3d 1155, 1160 (7th Cir. 2013). Thomas contests the scope of his alleged "scheme to defraud."

"We review a district court's decision to admit evidence of other bad acts for an abuse of discretion." *United States v. Norweathers*, 895 F.3d 485, 490 (7th Cir. 2018). But, if evidentiary objections are not made at trial, they are reviewed for plain error.

### A. The fires at Thomas's properties in 2010 and January 2013[1]

The district court ruled that these fires were evidence of the "scheme or artifice to defraud" required by § 1341. Thomas argues these fires were distinct events, separated by several years, and with unique participants. Thomas asserts only the April 2013 fire can be part of the scheme because that is the discrete event to which the four charged mailings relate. He contends evidence of any other fire is impermissibly tainted by a propensity inference.

---

[1] The parties dispute whether Thomas preserved his objection to the introduction of evidence of the November 14, 2010 and January 2013 fires at his properties. It is undisputed that Thomas moved to strike as surplusage references to all fires other than the April 2013 fire and did not move to exclude these fires. Thomas also discussed FED. R. EVID. 404(b) in his surplusage motion, even though it was filed under Federal Rule of Criminal Procedure 7(d). Because that motion can be read as objecting to evidence of the fires under FED. R. EVID. 404(b), we review this challenge under the abuse of discretion standard.

Thomas defines the scheme he is charged with too nar-
rowly. The government is "entitled to prove the scheme as a
whole" and a scheme is not limited to an isolated instance of
conduct. *United States v. Kolbusz*, 837 F.3d 811, 812 (7th Cir.
2016). Instead, a scheme is a "continuing course of conduct,
during a discrete period of time." *United States v. Davis*, 471
F.3d 783, 790 (7th Cir. 2006). A scheme can involve several acts
by the same actor, playing the same role, and done in a similar
way. *See, e.g. United States v. Swinton*, 75 F.3d 374, 378 (8th Cir.
1996). In a mail fraud prosecution, the charged mailings trig-
ger federal jurisdiction, but can relate to a scheme with a sig-
nificantly wider scope, *United States v. Boone*, 628 F.3d 927, 935
(7th Cir. 2010), one that "can produce proceeds long before
the act that ultimately triggers jurisdiction." *United States v.
Lanas*, 324 F.3d 894, 901 (7th Cir. 2003).

In *Lanas*, for example, the defendants were charged with a
scheme to receive kickbacks for investigative work. *Id*. They
objected to the introduction of evidence of attempts they
made to solicit kickbacks that were unsuccessful, arguing that
this evidence was unrelated to the mailings charged in the in-
dictment. *Id*. at 900. This court disagreed and decided that
these attempts were part of the scheme because they shared
characteristics of time and manner that made them part of a
continuous effort to defraud. *Id*. at 901. *See also United States v.
O'Brien* 953 F.3d 449 (7th Cir. 2020) (concluding that discrete
transactions occurring over three years with different finan-
cial instructions were part of the defendant's scheme).

The district court correctly concluded here that the fires in
November 2010 and January 2013 on Thomas's properties
were part of the scheme to defraud. They were similar occur-
rences designed to defraud in a similar way and took place

over a relatively short period of time. Several facts show this: these fires took place within a span of less than three years (with three on the same day), each property was located within the Born's mobile home park, and each fire involved a property Thomas owned or in which he had an interest. Even more, less than thirty days before each fire Thomas or his wife took out a new insurance policy on the property, experts reported and testified that each of the fires was arson, and shortly after each fire Thomas requested and received money from the insurance company. Given the overwhelming similarity of these events and their proximity in time, the district court did not abuse its discretion in determining that these fires were part of the same scheme under 18 U.S.C. § 1341.

Because the fires in 2010 and January 2013 on Thomas's properties were direct evidence of Thomas's mail fraud scheme, Rule 404(b) is not implicated, and the evidence was properly admitted. Neither was the probative value of this evidence substantially outweighed by its risk of unfair prejudice to Thomas under Federal Rule of Evidence 403. Although the district court did not explicitly engage in this balancing, implicit in its description of the highly probative nature of this evidence was a finding that it did not unfairly prejudice the defendant. *See, e.g., Gorman*, 613 F.3d at 720 (admitting evidence "[a]lthough the district court might have better explained the rationale behind its Rule 403 conclusion"), *citing United States v. Price*, 617 F.2d 455, 460 (7th Cir. 1979). As part of the charged scheme, evidence of these fires was highly probative of proving the crime charged, which was not substantially outweighed by the risk of unfair prejudice to Thomas.

**B. The fires at 2729 Air Stream Court and 5370 Holiday Street**

The district court also ruled that these fires were part of the 18 U.S.C. § 1341 scheme. Nissen testified they were set to make it look like someone had been burning abandoned trailers and to divert suspicion from Thomas. In his arguments Thomas does not distinguish between the fires on his properties and these diversionary fires. Instead he asserts that, as with the other fires, Rule 404(b) precludes their admission because they were discrete events.

The district court correctly reasoned that efforts to conceal a scheme can be part of the scheme itself. *See United States v. Anzaldi*, 800 F.3d 872, 881–82 (7th Cir. 2015) (admitting evidence in a tax fraud case of efforts by the defendants to avoid detection by requesting smaller refund checks from the IRS); *United States v. Ryan*, 213 F.3d 347, 349–50 (7th Cir. 2000). Although this court in *Anzaldi* analyzed evidence under Rule 404(b), its reasoning is consistent with the finding that efforts to conceal can be part of a mail fraud scheme. 800 F.3d at 881-82. The object of fraud is to deceive without detection. It follows that efforts to make the deception more effective are part and parcel of the fraud itself. *See United States v. LeDonne*, 21 F.3d 1418, 1430 (7th Cir. 1994) ("[a]voidance of detection is often a material part of a fraudulent scheme; for an illegal scheme would hardly be undertaken were there to be no profit to the plotters.")

The diversionary fires were part of Thomas's mail fraud scheme, so evidence of them was properly admitted as direct evidence of the scheme. The fires were set to distract authorities' attention from Thomas and in turn to make the insurance companies more likely to pay on the claims without

investigation. This evidence was also highly probative as it was a part of the charged crime and therefore not unfairly prejudicial, satisfying Rule 403.

### C.  The 2004 fire at 2691 Julia Drive

The district court correctly excluded this fire from the mail fraud scheme. The other fires took place within a three-year period, 2010 through 2013, with relatively short spans of time elapsing between each one. The 2004 fire is six years removed from any of the other fires. Although a scheme has no set duration, a long gap in time between occurrences may result in one event being excluded. *See Boone*, 628 F.3d at 935 ("[a]s evidence regarding the scheme moves farther, both temporally and in terms of the defendant's involvement, from the defendant's actions that form the crux of the criminal claim, that balance may well tip in favor of exclusion.")

As a threshold matter, Thomas argues evidence of the 2004 fire should have been excluded because a jury could not find by a preponderance of the evidence that Thomas intentionally caused the 2004 fire to collect insurance money, as required by *Huddleston v. United States*, 485 U.S. 681 (1988). But *Huddleston* explicitly rejected the proposition that a district court must make a finding about whether a party in fact committed an "other act," so the absence of a finding does not doom this evidence. *Id*. at 690. Thomas also did not object on this point in the district court, and "[i]t is, of course, not the responsibility of the judge sua sponte to insure that the foundation evidence is offered; the objector must move to strike the evidence if at the close of the trial the offeror has failed to satisfy the condition." *Id.* at 690 n. 7. Because Thomas failed to object, we review for plain error. *Bradford*, 905 F.3d at 505. There was no plain error here. Testimony at trial established that in 2004

Thomas told his friends and relatives that he had a family member start the fire and that two insurance companies paid him. The district court also could consider the other fires that were part of the scheme in determining whether Thomas had set the 2004 fire for a fraudulent purpose. *Cf. Huddleston,* 485 U.S. at 691.

Because the 2004 fire was not part of the mail fraud scheme, Rule 404(b) and the *Gomez* framework apply. First, the government offered evidence of the 2004 fire for the non-propensity purpose of establishing identity and intent. That past similar and idiosyncratic events can be probative of identity, intent, or lack of accident is firmly rooted in the legal tradition. *See, e.g., Rex v. Smith* 11 Cr. App. R. 229 (1915) (the "brides of the bath" case where in defendant's prosecution for murder of his third wife found dead in a bathtub, evidence was admitted that two of defendant's previous wives had drowned in the bathtub). Such *modus operandi* evidence must "bear a singular[ly] strong resemblance to the pattern of the offense charged with the similarities between the two crimes sufficiently idiosyncratic to permit an inference of pattern for purposes of proof" and not a character inference. *United States v. Thomas*, 321 F.3d 627, 634–35 (7th Cir. 2003) (internal quotation marks omitted). Where the defendant does not admit to performing the prior acts, those acts must be sufficiently unique that the predominate inference is that it is unlikely that the defendant would be involved in two or more situations with such similar circumstances without having anything to do with them. *See* DAVID P. LEONARD, THE NEW WIGMORE: A TREATISE ON EVIDENCE: EVIDENCE OF OTHER MISCONDUCT AND SIMILAR EVENTS § 13.2 (2020).

Distinctiveness is key to whether something is proper *modus operandi* evidence. Such uniqueness lies on a spectrum. On one end are acts such as run-of-the-mill drug deals with no special characteristics or geographical relationship to the crime charged. *See United States v. Simpson*, 479 F.3d 492, 498 (7th Cir. 2007), *abrogated in part on other grounds by United States v. Richards*, 719 F.3d 746 (7th Cir. 2013); *United States v. Wright*, 901 F.2d 68, 69 (7th Cir. 1990). Such evidence is so generic it is unhelpful for proving a Rule 404(b)(2) element and is likely to give rise to the forbidden propensity inference. On the other end are events that share singular methods, locations, participants, and scope. The paradigmatic example is the robber who holds up banks in the same geographic area, in a specific manner, wearing the same type of mask or clothing. *See United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019). Because those events are more distinct, they are more probative of a Rule 404(b)(2) element and less likely to provoke a propensity inference. *Id*.

Thomas argues the 2004 fire is generic and more like a run-of-the-mill drug deal than a bank robbery done with a "calling card." He asserts there is nothing distinct about (1) taking out an insurance policy on a home, (2) a fire occurring at that home, and (3) collecting the insurance money. But Thomas misses at least two salient points of distinctiveness that make the 2004 fire proper *modus operandi* evidence. First is the timing of the insurance policy. Like the fires that were part of the scheme, the insurance policy renewal in 2004 was less than 30 days before the fire. An insurance expert testified at trial that across thousands of claims, it is very rare for fires to occur within a month of a new insurance policy. The second is the geographical proximity of the fires. *See United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996) ("Geographic proximity is

certainly relevant to 404(b) analysis"). The 2004 fire occurred at 2961 Julia Drive, the same location as the April 2013 fire. Like the other fires, it happened in the one-square-mile mobile home park. These two similarities separate the 2004 fire from a random fire or act of arson. Propensity does not enter this chain of inferences. The probative value comes from its unique circumstances, not any inference about Thomas's character or general propensity to set fires.

The district court also did not err in determining that the probative value of the evidence of the 2004 fire was not substantially outweighed by its prejudicial effect. Identity and intent were contested in this case. Thomas claimed a pizza box left on the stove top caused the 2013 fire. Evidence of the 2004 fire helps to rebut this assertion. These circumstances—not Thomas's presence alone—make this evidence probative of him setting the fires and defrauding the insurance companies. The district court also did not abuse its discretion in deciding that this probative value was not substantially outweighed by unfair prejudice. As the district court aptly described, the prejudice to Thomas from evidence of the 2004 fire stems from its inclusion with the other fires. On its own, the fire is not particularly prejudicial.

Even if the district court had erred in admitting evidence of the 2004 fire, that error must be harmful to warrant reversal. *United States v. Conner*, 583 F.3d 1011, 1025 (7th Cir. 2009). "An error is harmless when the reviewing court is convinced that the jury would have convicted even absent the error." *Id*. If we exclude the 2004 fire, the evidence of Thomas's guilt is still overwhelming. The 2010 and 2013 fires were all properly admitted as part of Thomas's scheme. The testimony of Jennifer Thomas, Nissen, a fire marshal, and insurance experts

about these fires was more than enough for a reasonable jury to convict Thomas of mail fraud. Any error the district court committed in admitting the 2004 fire was harmless.

### III. Conclusion

For these reasons we agree with the district court's decisions in all respects and AFFIRM Thomas's convictions.